### BOLES et ux. v. RED et al.
### No. 2748.

Court of Civil Appeals of Texas. Eastland.
Feb. 3, 1950.

Rehearing Denied March 3, 1950.

L. D. Hawkins, Breckenridge, Frank S. Roberts, Breckenridge, for appellants.

Harrell & Harrell, Breckenridge, for appellees.

GRISSOM, Chief Justice.

G. H. Red, Jr., a minor, by next friend, sued T. L. Boles and wife for title and possession of the surface of a strip of land containing 4.79 acres. The Boles, by cross-action, asserted title to the strip and also claimed a roadway by prescription and a way of necessity over a tract of about 500 acres, the surface of which was owned by G. H. Red, Jr. Red's 500 acre tract lay on the west, north and east of a 100 acre tract owned by Boles in the same section. The strip that both Boles and Red claim and that is in controversy here is the north half of a 9.58 acre strip of land that runs north and south across both Boles' 100 acre tract and Red's 500 acre tract in section 451. This strip was used as a right-of-way by the Eastland, Wichita Falls & Gulf Railroad Company from about 1920 until the railroad tracks were removed in 1944. Half of the strip lies within Boles' 100 acre tract on the south side of section 451 and half within Red's 500 acre tract. Boles' 100 acre tract was conveyed by Wharton to Connellee, trustee for said railroad, in 1920, for the purpose of establishing the new townsite of Gunsight. Only the north half of said 9.58 acres right-of-way strip, which projects out of Boles' 100 acre townsite tract and lies within Red's 500 acre tract, in section 451, is in controversy here.

The Boles claim that for 50 years prior to February, 1948 there has been a clearly marked road running north and south across said section; that said road entered section 451 on its south boundary line at a gate about half way between its southwest corner and the southeast corner of Boles' 100 acre townsite tract which is also within section 451); that said road entered section 451 from the north through a gate in the fence on the north boundary line of section 451, about one-fourth of a mile east of the northwest corner of said section; that said road touches the west boundary line of Boles' 100 acre townsite tract at a gate in its west boundary line about midway between the northwest and southwest corners of said townsite tract.

The Boles contend that when Wharton, in 1920, executed a deed to said railroad company to the 9.58 acre strip, to be used as a railroad right-of-way, and on the same day conveyed to Connellee, trustee for said railroad company, the 100 acre townsite and retained title and possession of the remaining 500 acres, more or less, in section 451, Wharton thereby caused the townsite to become inaccessible except across the 500 acres retained by Wharton, or the land of strangers on the south. This is correct. The Boles charge that Wharton, by executing said deed and retaining the remainder of the section, impliedly granted a way of necessity across said 500 acres to and from said 100 acres townsite. The Boles further contend that they, and the public, have a roadway by prescription from the north gate to the south gate across said 500 acre tract. In addition to the 100 acre townsite tract, which has as its south boundary a part of the south boundary line of section 451, Boles owns 160 acres which joins Red's 500 acre tract on the northeast.

The court instructed the jury to find for Red on the question of title to and posses-

sion of that portion of the 100 foot wide railroad right-of-way strip lying north of Boles' 100 acre townsite tract and within Red's 500 acre tract, and on the issue of a road by prescription north and south across section 451, on the issue of a way of necessity from Boles' 100 acre townsite north to the gate on the north boundary line of survey 451 and on the issue of improvements in good faith. The court instructed a verdict for the Boles on the issue of a way of necessity from the gate in the west boundary line of Boles' 100 acre townsite tract southwest over the established road to the gate in the south boundary line of survey 451. The jury returned the verdict as instructed. Judgment was rendered accordingly. The Boles have appealed.

Boles' first three points are: (1) that Wharton's deed to said railroad company of the 100 foot railroad right-of-way strip on its face, as a matter of law, conveyed the fee simple title to the surface and not merely an easement; (2) that the undisputed evidence shows that when said deed was delivered, the parties thereto mutually intended that it should have such effect and thereafter so mutually interpreted and construed it; and (3) that a fact issue was raised as to whether said deed conveyed the fee simple title to the surface of the strip.

It was agreed that Dr. Wharton was the common source of title to section 451, including said right-of-way strip. In 1920 Dr. Wharton and wife executed a deed to said 100 foot right-of-way to said railroad company, reciting therein that they "granted, sold and conveyed, and by these presents do grant, sell and convey unto the said— railroad company a *right-of-way* (said right-of-way to be not less than one hundred feet in width) *for* the construction, maintenance and operation of a railroad, the erection of telephone poles and wires, *in, upon and across the following described* lot, tract or parcel of *land,*—to-wit:

" 'A strip of land 100 feet in width, 50 feet on each side of the center of the Eastland, Wichita Falls and Gulf Railroad, through Section 451, S.P.R.R. extending— a linear distance of 4166 feet, and containing 9.58 acres, more or less, excepting, however, any and all minerals in and under the said land.

" 'To have and to hold the above described premises, together with all and singular the rights and appurtenances thereto in any wise belonging unto the said— railroad company, its successors or assigns, *for the uses and purposes hereinabove* set forth.' " (Italics ours).

On the same day the Whartons also executed a warranty deed conveying to Connellee, trustee for said railroad company, said 100 acre townsite tract, now owned by Boles. After describing said tract, the deed recited, "containing one hundred acres, exclusive of 4-79/100 acres, contained in the original railroad right-of-way—through the above described tract." All minerals were excepted from the conveyance.

In November, 1944, said railroad company executed a deed to Boles and wife to the Gunsight townsite 100 acre tract and to said 9.58 acre railroad right-of-way strip. After describing said townsite tract, the deed recites:

"—containing 100 acres of land, exclusive of 4.79 acres of land contained in the original railroad right-of-way of the said Eastland—Railroad running through the above described tract.

"Also a strip or parcel of land 100 feet in width, 50 feet on each side of the center of said—Railroad, through said Section 451,—extending—a lineal distance of 4.166 feet, and containing 9.58 acres of land, more or less. The total amount of land hereby conveyed being 109.58 acres, more or less, and contained in the above described two tracts."

In August, 1947, D. C. Wharton et al., the beneficiaries under the will of Dr. J. W. Wharton, deceased, executed a deed to E. H. Ellington conveying "a strip of land 100 feet wide across Section 451, S. P. Ry. Co. land, in Stephens County, Texas, and being the land formerly occupied as a right-of-way by the Eastland—Railway Company—" and referring to the record of Dr. Wharton's deed to the railroad company for description.

In October, 1948, Ellington executed a warranty deed to the strip to the plaintiff, G. H. Red, Jr.

In September, 1931, Dr. Wharton and wife executed a warranty deed to H. E. Baldridge conveying 500 acres, more or less, out of section 451. Following the description of the 500 acre tract was the following: "And being all of said Section No. 451, save and except those two tracts of land heretofore conveyed by us to the Eastland—Railroad Company, described as follows: First Tract: Being 9.58 acres to be used by them for right-of-way purposes—".

There followed a reference to the record of the right-of-way deed from Wharton to the railroad and description of the 100 acre townsite tract.

In January, 1933, Baldridge and wife conveyed to G. H. Red, father of the plaintiff, said 500 acres, more or less, out of Section 451, describing the land conveyed and excepted as it was in Wharton's deed to Baldridge.

In December, 1934, Red conveyed to plaintiff G. H. Red, Jr., the surface of said 500 acre tract, more or less, describing the land conveyed and excepted as in Wharton's deed to Baldridge.

Dr. Wharton died in 1937. The executor of his estate did not include said right-of-way strip in the inventory of his estate. The railroad company, from the time of Wharton's deed to it until it executed a deed to Boles, rendered taxes on 109.58 acres out of section 451. It is impossible to absolutely know from the record whether or not Dr. Wharton and his successors in title to the 500 acres, more or less, that remained in section 451 after conveyance of the 100 acre townsite and the 9.58 acre right-of-way out of said section, continued thereafter to render and pay taxes on the 4.79 acres of said right-of-way strip lying north of the 100 acre townsite tract and within Red's tract of 500 acres, more or less. The county tax collector testified that section 451 was carried on the tax records as 605 acres but he did not know how many acres were actually in the section. The patent called for 640 acres. After Boles got a deed from the railroad company to the 100 acre townsite and the 9.58 acre right-of-way he rendered only 104 acres in section 451 for taxation. The railroad company had been rendering 109.58 acres. Dr. Wharton and his successors in title rendered for taxation 500 acres out of section 451. The tax collector testified that he could not say that Dr. Wharton "wasn't rendering his part of that right-of-way—." The Boles say the railroad company mortgaged the strip and thereby asserted title to it. No mortgage is in the record, but there is a release by Manufacturers Trust Co., executed in 1945, releasing the 9.58 acre strip and 100 acre townsite that recites said tracts were mortgaged by the railroad in 1920 to secure a bond issue. Said two tracts were there described as they were in the railroad company's deed to Boles and wife. In 1944 the railroad company passed a resolution reciting that the right-of-way strip was abandoned and proposing to sell it and thereafter executed a warranty deed to said strip to Boles.

The granting clause in the deed to the strip from Dr. Wharton to the railroad company expressly recites that the thing conveyed is "a right-of-way." The use or purpose for which the "right-of-way" is conveyed is stated to be "for the construction, maintenance and operation of a railroad, the erection of telephone and telegraph poles and wires, in, upon and across" the land described. The habendum clause states that said railroad company is to hold the described strip, which is "not to be less than 100 feet in width,—for the uses and purposes hereinabove set forth."

■ We conclude that said instrument, as a matter of law, conveyed only a right-of-way and did not convey the land. Right of Way Oil Co. v. Gladys City Oil, Gas & Mfg. Co., 106 Tex. 94, 157 S.W. 737, 739, 51 L.R.A.,N.S., 268; Gulf Coast Water Co. v. Hamman Exploration Co., Tex. Civ.App., 160 S.W.2d 92 (writ ref.); Penn v. Holland, Tex.Civ.App., 105 S.W.2d 351, 354, (writ ref.); 132 A.L.R. 142 et seq.

■ We call attention to the fact that Red recovered title to only the north half of the 9.58 acre right-of-way strip, which

half lies within Red's 500 acre tract. We recognize the rule that a statement in a deed of the purpose for which land is conveyed will not necessarily constitute the grant less than a fee simple, but here the deed purported to convey only a "right-of-way." However, we agree with appellants that in the conveyance of the right-of-way it was unnecessary and useless to except the minerals. The minerals would not have been conveyed by said deed and there was no necessity for the exception. Perhaps the exception was made through an abundance of precaution, however, regardless of the reason therefor, the exception did not have the effect of conveying something which the deed did not purport to convey, namely, the land, described merely as that over which the right-of-way ran. Points one to three are overruled.

Appellants, the Boles, contend the evidence raised a question of fact as to whether they have title to the strip under the ten year statute of limitation. Appellees, Red et al., say that the railroad company went into possession of the strip under a deed which conveyed only a right-of-way and not the fee; that the railroad used the strip for right-of-way purposes until 1944, when its use was abandoned by the railway. We agree with appellees' statement thus far. However, appellees argue that the fee to the right-of-way strip was conveyed to Red in December, 1934, ten years before the land was abandoned for right-of-way purposes by the railroad, and that Red was then, and still is, a minor. In support of this argument, appellees refer to the 1934 deed from G. H. Red and wife to their son, G. H. Red, Jr., wherein they conveyed to Red, Jr., the surface of 500 acres, more or less, out of section 451. After reference to the record of the patent to section 451, the 500 acres is further described in said deed as "—being all of said Section, save and except those two tracts of land heretofore conveyed to the Eastland—Railroad Company —to-wit: First Tract: Being 9.58 acres to be used by said railroad for right-of-way purposes—" and Boles' 100 acre townsite tract. This does not support appellees' contention that the fee to the right-of-way strip was conveyed to Red, Jr., in 1934. The railroad right-of-way was expressly excepted from that conveyance.

■ The fee to that portion of the right-of-way strip lying north of Boles' 100 acre townsite tract, which was recovered by Red, Jr., was not conveyed by Dr. Wharton and was owned by his devisees when they attempted to convey it to Ellington in August, 1947, unless title thereto had been acquired by the railroad company, or the Boles, by limitation. We agree with appellees' argument that enjoyment of an easement and acts of ownership consistent therewith do not show an adverse claim to the fee and do not start limitation running against the fee. 2 C.J.S., Adverse Possession, § 89, page 646. However, the evidence is not conclusive that the railroad company's acts were all consistent with the claim to and enjoyment of a mere easement.

Appellants argue that the facts hereinafter indicated are shown by the evidence and, if they do not conclusively show title in appellants by limitation, that such evidence raised an issue of fact as to appellants having acquired title to the strip under the ten year statute of limitation. Appellants say that after Dr. Wharton executed a deed to the right-of-way to the railroad in 1920, that neither Dr. Wharton nor his devisees ever rendered said strip for taxes or paid taxes thereon; that the railroad consistently thereafter rendered said strip of land for taxes; that the railroad asserted title to the fee in 1920 by mortgaging it; that the railroad asserted title thereto when its board of directors, in September, 1944, passed a resolution reciting that retention of the strip was no longer necessary and that the road was being abandoned and the railroad company proposed to sell said strip and that the railroad asserted title under its deed from Wharton by executing and delivering to appellants a warranty deed to the strip, in November, 1944. Appellants further contend that after Dr. Wharton executed a deed to the railroad, in 1920, there is no suggestion in the record that the Whartons ever asserted any interest in the strip until the beneficiaries under Dr. Wharton's will

executed a deed to Ellington in 1947; that Dr. Wharton's executor and the appraisers of his estate did not include the strip, or any interest therein, in the inventory of his estate, although they showed that they had section 451 in mind by reporting ownership of a half interest in the minerals in 500 acres out of section 451. Appellants further point out that eleven years after Dr. Wharton conveyed the strip, and the 100 acre townsite, to the railroad, he conveyed to Baldridge the remaining 500 acres in section 451, excepting from the conveyance the strip and the townsite, without mentioning any reversionary interest in the strip.

D. C. Wharton, son of Dr. Wharton, testified that since the death of his father in 1937, neither he nor his brothers or sisters have made any claim to the right-of-way strip. However, he testified that he thought there was a clause in the "contract" that if the strip ceased to be used for railroad purposes it would revert to the Whartons; that the reason he didn't pay taxes on the strip was that he was not in charge of the estate; that he had no authority; that he did not learn that the railroad company was paying taxes on the strip; that he thought he had something to sell or he would not have signed the deed purporting to convey the right-of-way strip to Ellington. Appellants further argue that the renditions by Dr. Wharton and his executor and beneficiaries and Baldridge, Red and Red, Jr., tend to show that they did not claim title to the strip and that the railroad company's mortgage and tax renditions show the railroad company's claim thereto was hostile and adverse to them.

■■ There is evidence tending to show all the things claimed by appellants and mentioned above as tending to show they have title by limitation. After careful study of the entire statement of facts, we conclude this was a question of fact and the court erred in instructing a verdict thereon and adjudging title to the strip to be in Red, Jr., as a matter of law. See Brown v. Weare, 348 Mo. 135, 152 S.W.2d 649, 136 A.L.R. 296. Since there was a dispute in the evidence as to whether fences built by Boles along the right-of-way enhanced its value, the question of Boles' recovery for improvements was also a question for the jury.

■ Appellees say the court erred in instructing the jury and awarding appellants a way of necessity from the west gate in Boles' 100 acre townsite to the gate in the south boundary line of section 451. When Dr. Wharton conveyed the townsite tract to the railroad company he retained the remaining 500 acres in the same section. The 500 acres, more or less, retained lies on the west, north and east of the townsite tract. The only way that occupants of the townsite could travel to and from said tract, except by rail, was over the 500 acres retained by Dr. Wharton, or over the land of strangers lying on the south of the townsite tract and between the townsite and a public road on the south.

"The general rule is that, where there is conveyed a tract of land which is surrounded by the grantor's land or by his and that of third persons, and to which the grantee can only have access or egress through lands other than that conveyed, the grantee has a right of way by necessity over the remaining land of the grantor." 15 Tex.Jur. pages 784, 785. See also Bains v. Parker, 143 Tex. 57, 182 S.W.2d 397, 399 and Stuart v. Larrabee, Tex.Civ. App., 14 S.W.2d 316, 320 (writ ref.).

■ We do not believe Boles right to a way of necessity is defeated by the fact that at the same time that Wharton conveyed to the railway company the 100 acre townsite he also conveyed to it said right-of-way. It is not reasonable to believe that Wharton expected the residents of the townsite to enter and leave it only by train.

We think the court did not err in instructing the jury to return a verdict against appellants, the Boles, to the effect that they were not entitled to either a way of necessity or a road way by prescription across Red's 500 acre tract from the Boles 100 acre townsite tract north to the gate in the north side of Red's 500 acre tract. The Boles were not entitled to two ways of necessity from their town-

site tract to a public road. Relative to their claim of a roadway by prescription, there was evidence that a road, with variations, had existed in that general location since about 1883 and that the public and especially those residing in that part of the country habitually used it for many years and that the road was used in about 1920 for carrying the United States Mail.

■ There were gates where said road entered and left Red's 500 acre tract that were maintained by the owners of that tract. Prior to 1920, Dr. Wharton owned both tracts. Before that time there could have been no claim that one tract was the dominant and the other the servient estate, since they had the same ownership. The evidence does not tend to show that the use or possession of the roadway by appellants was exclusive. On the contrary, it shows that they, along with Red and his predecessors in title, used said roadway in common with others in the vicinity. We conclude that appellants' claim of a right to use the road was not adverse but permissive. See 98 A.L.R. 592; Sassman v. Collins, 53 Tex.Civ.App. 71, 115 S.W. 337, 339; 111 A.L.R. 221; Bretzke v. Gode, Tex.Civ.App., 289 S.W. 111.

It is undisputed that since about 1920, when Dr. Wharton sold 100 acres out of survey 451 to the railway company and conveyed the right-of-way, that the owners of said survey have maintained gates at the only entrances thereto. That those who have used the road in question have opened and closed both gates "out of respect to the owners of the land." It is admitted by Mr. Boles, appellant, that when an oil company was drilling a well on an adjoining farm and wanted to improve a part of this road so they could use it ("wanted to pull some trees out of the way so they could get in there, and Mr. Sorrels got Dick Wohlford to go in and pull down all of the trees so they could work the road") that he went with Mr. Sorrels to Eastland to see Mrs. Ellington and asked her for permission to work on the road. That Mrs. Ellington granted permission. That they then improved said road.

It is undisputed that the owners of section 451 and their lessees have always used the road in question. Mr. Boles testified: "Q. And all of the owners of that land have always used that road in getting in and out of that place, haven't they? A. That's right."

Mr. Boles testified that he used the road in 1945 to look after his own and Mr. Walker's cattle grazing on the 500 acre tract, Mr. Walker then being the lessee of the Ellingtons, who then owned the 500 acres across which the road in question runs. Mr. Boles testified: "Q. You were a tenant under him? A. Yes, sir."

■ A tenant cannot claim adversely to the landowner and such relationship, existing at any time during the period of limitation, breaks the continuity of the adverse claim. Sassman v. Collins, 53 Tex. Civ.App. 71, 115 S.W. 337, 339 (writ ref.). The Supreme Court of Texas in Texas Western Ry. Co. v. Wilson, 83 Tex. 153, 157, 18 S.W. 325, 326, said, "A single act of acknowledgment by the defendant of the owner's title is fatal to the right."

Such evidence sustains the judgment denying appellants a roadway both by prescription and necessity running north and south across Red's 500 acres.

■ The general rule applicable to a roadway by prescription claimed by an individual, is stated in 15 Tex.Jur. 797, as follows: "To establish a prescriptive right to an easement the use must be exclusive. The use of a way, for example, in common with others or the general public is not sufficient to create a prescriptive right, though the way be used for the prescriptive period. Especially is this true where there is no independent assertion of a right more pronounced and peculiar in behalf of the claimant and more indicative of an adverse claim than the open and notorious use with others. If the way is also used by the owner of the land, the use is not adverse and will not give a prescriptive right."

That part of the judgment awarding Red, Jr., title to the 4.79 acre right-of-way within Red's 500 acre tract, and that part of the judgment disposing of appellants' claim for improvements in good faith, are reversed and the cause remanded. In all other respects, the judgment is affirmed.