Ferdinand A. DALO, Jr., et
al., Appellants,

v.

C. W. LAUGHLIN, et ux, et
al., Appellees.

No. 16736.

Court of Appeals of Texas,
San Antonio.

July 14, 1982.

Hector De Pena, Jr., Haas & De Pena, Corpus Christi, for appellants.

Homer E. Dean, Jr., Alice, for appellees.

Before CADENA, C. J., and BUTTS and CLARK, JJ.

## OPINION

BUTTS, Justice.

This is a trespass to try title action in which the jury verdict upheld the defendants' claim of adverse possession by the ten year statute of limitation. Tex.Rev.Civ. Stat.Ann. art. 5510 (Vernon 1958). The trial court rendered judgment awarding title and possession of the property, twenty acres in Jim Wells County, to the defendants (Laughlin). Appellant Dalo assigns three points of error: (1) that there was no evidence of notice of repudiation of the tenancy relationship; (2) that there was no evidence of inconsistent use of the 20-acre tract to show adverse possession; and, (3) that the trial court erred in refusing to admit evidence of three prior suits filed by Dalo against Laughlin since these showed interruption of the statute of limitation. We do not agree with these contentions and, therefore, affirm the judgment of the trial court.

Dalo, the record owner of the twenty acres in dispute, lived in Pennsylvania. In 1941 Dalo leased the twenty acres to C. Fast, who farmed several hundred other leased acres which did not belong to Dalo, and ran cattle on some of the land. This twenty acres was used as grazing land. In 1953 J. J. Fast, then the lessee of the whole spread, sold the entire leasehold to Arthur Balzer, who continued using the particular twenty acres for cattle grazing. That Balzer recognized the tenancy relationship is not in dispute. Dalo testified he wanted someone to "take care" of the land during that time and did not charge rent. He received some revenue from oil and gas leases on the land executed in 1931. Dalo also stated he gave an easement to the county to erect a fence on the south side of the twenty acres in 1948. That fence remains today and abuts a county road. The east and west sides had earlier been fenced for cattle grazing. The north side remained open since there was no water on the twenty acres, thereby necessitating access to the other acreage.

Clyde Schuchert, the son-in-law of Balzer, testified that in 1955 Balzer, the tenant, "divided up" with Schuchert all of Balzer's land holdings, including the twenty acres. He stated his adverse claim began at that time.

In two points of error Dalo challenges the sufficiency of the evidence to prove *notice* of repudiation of the tenancy relationship and to prove the required inconsistent *use* of the twenty acres. The statutes applicable to the questions are Tex.Rev.Civ.Stat. Ann. arts. 5510, 5514, 5515, 5516 (Vernon 1958). Article 5510 provides, in part:

Any person who has the right of action for recovery of lands, tenements or hereditaments against another having peaceable and adverse possession thereof, cultivating, using or enjoying the same, shall institute therefor within ten years next after his cause of action shall have accrued, and not afterward. . . .

Article 5514 provides:

"Peaceable possession" is such as is continuous and not interrupted by adverse suit to recover the estate,

Article 5515 provides:

"Adverse possession" is an actual and visible appropriation of the land, commenced and continued under a claim of right inconsistent with and hostile to the claim of another.

Article 5516 provides:

Peaceable and adverse possession need not be continued in the same person, but when held by different persons successively there must be a privity of estate between them.

Schuchert, an original defendant but not a party to this appeal, testified he took exclusive possession of the twenty acre tract, rebuilt and repaired the fences. He said he root plowed and put in buffle grass in the early part of 1960 or latter part of the 1950's. He used the land for grazing his own branded cattle. He never paid taxes on it although Dalo did pay the school taxes. Schuchert said he dug a pond on the tract during the late 1950's. He affirmed that he used the land continuously from 1955 until he conveyed it by deed, along with other land, to Laughlin in 1969. And, he testified, he claimed the land against the world.

A. H. Hunter, called as a witness by Dalo, recalled that in the 1950's (later he said 1960's) Clyde Schuchert told him he would shoot anyone crossing this land which he was claiming. The evidence showed Dalo executed a lease on the land to Servando Guerra in 1971. Guerra climbed a fence and built a fence on the open north end, however, Guerra testified, it was torn down within the week by Laughlin. Laughlin testified he told Dalo himself when he came on the land in 1974 that Dalo would have to sue him. There was conflicting testimony about the cleared condition of the land and whether it could be used to graze cattle because of dense brush growth; but cattle had been seen on it, not only in the 1960's but also after Laughlin acquired the land from Schuchert. A. H. Hunter stated that Laughlin denied him permission to place a road to his own landlocked property through the twenty acres. He knew that Laughlin was "claiming everything in there."

It is settled law that a tenant of the record owner is on the claimed land permissively, and title cannot mature in him in the absence of repudiation of the relationship. *Sweeten v. Park*, 154 Tex. 266, 276 S.W.2d 794 (1955). To be adverse, notice of the repudiation of the tenancy must be brought home to the titleholder. *Tex-Wis Company v. Johnson*, 534 S.W.2d 895, 899 (Tex.1976). Notice may be inferred from acts of unequivocal notoriety. *Sweeten v. Park*, 154 Tex. at 272, 276 S.W.2d at 798. *Compare Texas Co. v. Argo Oil Co.*, 277 S.W.2d 308, 309 (Tex.Civ.App.— San Antonio 1955, writ ref'd n. r. e.). Thus, the notice to the titleholder may be "constructive" rather than "actual." Laughlin contends the record owner received constructive notice in this case.

The single issue submitted to the jury was:

Do you find from a preponderance of the evidence that the defendants, C. W. Laughlin and wife, Marguerite Scales Laughlin, and their predecessor in title, Clyde Schuchert, had and held peaceable and adverse possession of the 20 acres in question, using, cultivating, or enjoying the same for any period of ten consecutive years or more before December 1, 1977, when this lawsuit was filed?

Answer "Yes" or "No".

We, the Jury, answer: Yes

An instruction on "tacking" accompanied this. The jury was told that to constitute adverse possession for the period of ten years, possession may be held by different persons successively. Art. 5516, *supra*. Where there is privity of possession, the possession periods of two or more persons may be combined or tacked. 2 Tex.Jur.3rd, *Adverse Possession*, §§ 36, 37, and cases cited therein. In this case Laughlin relied upon the deed from Schuchert, executed in 1969, to show the privity of estate between them. It must be the years before 1967, however, to which the jury looked to find whether there was repudiation of the tenancy relationship. For it was the acts and circumstances signifying possession of the

twenty acres by Schuchert which constituted notice and determined when, if ever, the statute of limitation began to run, and these acts must have occurred before 1967, ten years before the filing of this suit. Art. 5510, *supra.*

 The evidence showed Schuchert rebuilt and maintained the fences, incorporating them into his own system of ranch fencing, thereby enclosing the twenty acres into the claimant's property to which he held title. *See Butler v. Hanson,* 455 S.W.2d 942, 945 (Tex.1970). We find there is ample evidence to support the finding that through his acts Schuchert established that element of adverse possession which is necessary here before the 10 year statute of limitation could begin to run: notice of repudiation of the tenancy. Although it is true that Schuchert continued to graze cattle on the land, as had the former tenant, there is also evidence of other activities i.e. digging a pond, root plowing, putting in buffle grass, threatening to shoot any trespasser, as well as connecting the rebuilt fences with his ranch fencing. These are all uses of the land inconsistent with the former use. Accordingly, we hold that the inconsistent use of the land created an inference of repudiation of any tenancy relationship and that the record owner received this constructive notice. Further, because this was use of the land *inconsistent* with its previous use, the continued payment of school taxes by the record owner did not interrupt the running of the statute once it began. *See Tex-Wis Company v. Johnson, supra,* in which the court noted that payment of taxes when there was simply a long-term *consistent* use of the land acted to interrupt the statute of limitation.

Not required by the single special issue submitted in the present case to find when the ten year statute began to run, the jury found only that peaceable and adverse continued for the requisite period. *See Bruni v. Vidaurri,* 140 Tex. 138, 166 S.W.2d 81 (1942). We agree but would underscore certain evidence to substantiate this finding. Although Schuchert stated he entered the twenty acres in 1955, the distinctly different use of the land shown in the record first occurred in the late 1950's or 1960. (A definite date does not appear.) If we assume the year to be 1959 or 1960 when he put in the pond and root plowed, as well as joined up his ranch fences to the existing ones on the twenty acres, the ten year period of continuous open and hostile holding, with evidence of "acts of notoriety", began at that time. It continued without interruption until 1969 when Schuchert conveyed the twenty acres to Laughlin by deed. Under these circumstances the continued payment of school taxes by the record owner in Pennsylvania did not interrupt the running of the statute.

The evidence shows without doubt that after 1969 Laughlin permitted no physical interruption of the statute, the running of which continued through his privity of estate with Schuchert. We hold that the ten year statute of limitation began to run no later than 1960. The two points of error are overruled.

Dalo contends in the final point of error that the trial court improperly excluded evidence of his prior suits against Laughlin because the filing of these causes of action interrupted and suspended the running of the statute of limitation. We find the ruling of the trial court to be correct.

The disputed twenty acres is located in section 62 of the R. P. Haldeman subdivision. Dalo filed three suits successively, along with approximately fifty other record owners of lots in sections 61 and 62 of the Haldeman property. The purpose of the first suit, No. 72–C–18, filed in federal court in 1972, was to remove cloud from the title of the many described lots, including the twenty acre lot of Dalo, located in sections 61 and 62. The certified record of the federal court shows the court dismissed the suit in 1974 for want of jurisdiction (a diversity question.)

Dalo, along with many other record owners, prosecuted the second suit No. 17239, in state court and filed it within sixty days of the federal dismissal in 1974. Tex.Rev.Civ.

Stat.Ann. art. 5539a (Vernon 1958).[1] The state cause of action contained substantially the same allegations of the record owners of lots in the two sections as had the federal one. After the individual record owners' actions had been severed by the state trial judge, Dalo requested and obtained a non-suit of No. 17239 on December 2, 1977. In 1975 Dalo and the other record owners sued Laughlin and others in federal court through a class civil rights action, No. 75–C–141. For failing to state a class claim for relief under the federal civil rights statutes, the cause of action was dismissed in August 1977. On December 1, 1977, Dalo (alone) filed the present cause of action, which is a trespass to try title suit.

■ Dalo contends that state suit No. 17239 carried over and revived the previous 1972 federal suit to remove cloud from title and quiet title, and that both were "adverse suits." Both the federal and state suits were brought by numerous plaintiffs to clear title of numerous lots in two sections of land. When a pleading contains every count basic to a trespass to try title action in a federal suit, and that suit is dismissed for want of jurisdiction, the savings provisions of art. 5539a, *supra*, will apply. *Republic Nat'l Bank of Dallas v. Rogers*, 575 S.W.2d 643, 646 (Tex.Civ.App.—Waco 1978, writ ref'd n. r. e.). *Burford v. Sun Oil Co.*, 186 S.W.2d 306, 310 (Tex.Civ.App.—Austin 1945, writ ref'd n. r. e.). Thus, it is possible for suspension which occurred earlier to continue when the second suit is filed in state court within sixty days after the dismissal, provided the original suit sets forth in its petition the requisites of a trespass to try title action or is capable of amendment to conform to the requisites. *Republic Nat'l Bank of Dallas v. Rogers*, 575 S.W.2d at 646–647. Tex.R.Civ.P. 783 (Vernon 1967) specifies the pleading requisites.

■ The running of the limitation period is stopped as of the filing of the petition to determine title, even though the adverse claimant continues in actual possession of the land. But the suit must be prosecuted to a final judgment. If it is abandoned, it is as if it had never been instituted. *Gibbs v. Lester*, 41 S.W.2d 28, 30 (Tex.Comm'n App.1931, judgment adopted), *Poole v. Goode*, 442 S.W.2d 810, 812–813 (Tex.Civ. App.—Houston [14th Dist.] 1969, writ ref'd n. r. e.).

■ In this case when the 1972 federal case was dismissed for want of jurisdiction in 1974 and the state cause of action was filed within six months thereafter in 1974, the savings provisions of art. 5539a applied, keeping the "adverse suit" for title, if it was, viable. But when Dalo voluntarily moved for and received dismissal by non-suit, the state case no longer existed. Article 5539a could not breathe continuing life into the present suit, for Cause No. 17239 was *nonsuited* rather than dismissed for *want of jurisdiction* of the trial court. Therefore, the 1972 federal suit to quiet title died with that voluntary nonsuit. The effect was the same as failure to prosecute an adverse suit to a conclusion and abandonment of the adverse suit. *Gibbs v. Lester, supra* at 30. For this reason we have no need to determine whether state cause No. 17239 was "adverse" and subject to amendment to state a trespass to try title action as set forth in Rule 783. We hold that if the cause of action filed in 1972 did toll the statute of limitation, it was not prosecuted to a final conclusion; rather it was abandoned, and it is as if the 1972 suit had not been filed and the ten year statute had not been tolled.

Although our examination of the record indicates the jury could base its finding for the adverse claimant solely on the period preceding 1972, we find it could properly include the years before 1977, when this

---

1. Article 5539a provides that
 when an action shall be dismissed in any way ... because of a want of jurisdiction of the trial court in which such action shall have been filed, and within sixty (60) days after such dismissal ... becomes final, such action shall be commenced in a Court of Proper Jurisdiction, the period between the date of first filing and that of commencement of the second court shall not be counted as a part of the period of limitation....

case was filed, as part of the time of the adverse claim. We also find that the civil rights action was not amenable to amendment alleging a trespass to try title action, and could not be carried over through the present action. We hold the trial court correctly excluded evidence of the prior suits.

The judgment is affirmed.