**Edwin K. MALMGREN, Appellant,**

v.

**INVERNESS FOREST RESIDENTS CIVIC CLUB, INC., Appellee.**

**No. 01–97–00935–CV.**

Court of Appeals of Texas, Houston (1st Dist.).

Nov. 5, 1998.

David A. Furlow, Houston, for Appellant.

Hal R. Gordon, Houston, for Appellee.

Before MIRABAL, O'CONNOR and NUCHIA, JJ.

## OPINION

O'CONNOR, Justice.

Edwin K. Malmgren, the appellant here and defendant below, appeals from summary judgment granted Inverness Forest Residents Civic Club, Inc. (Inverness), the appellee here and plaintiff below, on its claim he violated its deed restrictions. The trial court denied Malmgren's motion for summary judgment on the statute of limitations defense, and awarded Inverness $47,500 in attorney's fees. We reverse the summary judgment for Inverness on its deed restriction claim and attorney's fees, we grant Malmgren's motion for summary judgment on his statute of limitations defense, and we render judgment that Inverness take nothing against Malmgren.

### Factual and Procedural History

Malmgren has lived in Inverness Forest since 1967. In November 1991, he bought a Vietnamese pot-bellied pig, Whoopi, to keep as a pet. Malmgren keeps Whoopi in his house; he does not plan to eat, breed, or sell her (she was spayed). In 1991, Malmgren showed her to his neighbors, including the block captain. Like Malmgren's other pets, Whoopi remains in the house on a glassed-in, heated and air-conditioned patio or in the fenced backyard. Sometimes Malmgren takes Whoopi out in the front yard to play with his dog.

Inverness Forest is a subdivision outside of Houston. Among its deed restrictions is a provision concerning pets and livestock. Specifically, deed restriction number 14 states, "The raising or keeping of hogs, horses, poultry, fowls, or other livestock on any part of the subdivision is prohibited."

The procedural history of this case is complicated. The case started on November 8, 1995, when Inverness filed suit against Malmgren in the justice of the peace court seeking an injunction to enforce restriction 14. The justice of the peace court ordered the parties to mediation, without success. Inverness voluntarily nonsuited the case on March 25, 1996, and re-filed it in district court on April 12, 1996. This appeal is a result of the district court proceeding.

In district court, Inverness sought a temporary injunction barring Malmgren from keeping "a hog" on his property. Inverness made only one claim against Malmgren, that keeping a "hog" violated Inverness' deed restriction 14.

In Malmgren's second amended answer and first amended counterclaim, he argued the terms "hogs" and "livestock" in restriction 14 do not prohibit him from keeping a single Vietnamese pot-bellied pig as a pet. He argued Inverness' interpretation of those terms was unreasonable and unenforceable. Malmgren asserted affirmative defenses, claiming Inverness' suit was barred by the doctrine of laches and the four-year statute of limitations because Inverness had allowed him to keep her for almost five years. Malmgren filed several counterclaims seeking to have Inverness' restrictions declared invalid and a temporary injunction barring Inverness from enforcing them.

On March 13, 1997, Inverness moved for summary judgment on its claim against Malmgren for violation of the deed restriction.[1] The trial court granted Inverness' motion for summary judgment.

On May 9, 1997, Malmgren filed a motion for partial summary judgment on the statute of limitations defense. On July 24, 1997, the trial court denied the motion. At the same time, the trial court overruled all of Malmgren's outstanding objections and motions, including his motion for reconsideration of the trial court's rulings granting Inverness summary judgment and his objections to Inverness' summary judgment evidence.

Inverness moved for summary judgment on attorney's fees. The trial court granted the motion and awarded Inverness $47,500 in attorney's fees.[2]

## Analysis

In issues seven and eight, Malmgren argues the trial court erred by denying his summary judgment on his statute of limitations defense. Because we agree with Malmgren on these issues, we do not discuss issues one through six or ten which complain of the trial court's granting summary judgment to Inverness.

■ When both parties move for summary judgment, and the trial court grants one motion but denies the other, the result is a final judgment. The party that did not prevail may appeal both the summary judgment granted against it and the motion for summary judgment the court denied. *Holmes v. Morales*, 924 S.W.2d 920, 922 (Tex.1996). If the appellate court finds one motion for summary judgment was erroneously granted, the court will review the ruling on the opposing motion and grant summary judgment based on that motion if it finds the trial court should have granted it. *Id.* Before the appellate court can reverse and render for the other party, that party must be entitled to a final—not partial—summary judgment as a matter of law. *Bowman v. Lumberton ISD*, 801 S.W.2d 883, 889 (Tex.1990).

Inverness was granted summary judgment on its claim, and Malmgren was denied summary judgment on his statute of limitations defense. A final judgment was rendered by the trial court. Therefore, we may review the trial court's denial of Malmgren's motion for summary judgment.

■ A defendant is entitled to summary judgment if it conclusively establishes all elements of an affirmative defense as a matter of law. *Roark v. Stallworth Oil & Gas, Inc.*, 813 S.W.2d 492, 494 (Tex.1991); *Rose v. Baker & Botts*, 816 S.W.2d 805, 809–10 (Tex. App.—Houston [1st Dist.] 1991, writ denied). Actions to enforce restrictive covenants are controlled by the four-year statute of limitations. *Park v. Baxter*, 572 S.W.2d 794, 795 (Tex.App.—Tyler 1978, writ ref'd n.r.e.); *Buzbee v. Castlewood Civic Club*, 737 S.W.2d 366, 368 (Tex.App.—Houston [14th Dist.] 1987, no writ). Under contract law, contract claims accrue when the contract is breached. *Hoover v. Gregory*, 835 S.W.2d 668, 677 (Tex. App.—Dallas 1992, writ denied).

---

1. Inverness' motion was set for submission on April 7, 1997. Malmgren moved for a five-week continuance to take the depositions of Inverness' officers, which had been scheduled for the first two weeks of April. Malmgren argued he needed the deposition testimony to develop the statute of limitations defense. The trial court denied the motion for continuance.

2. Of this amount, $22,500 was for attorney's fees for trial, $15,000 for appeal to the court of appeals, and $10,000 if appealed to the Texas Supreme Court.

Malmgren claimed Inverness' suit on the restrictive covenant was barred by the statute of limitations because it had let him keep his pet pig for almost five years. Malmgren argues the cause of action, if indeed one existed, accrued when he first brought his pet pig to live with him on Thanksgiving, November 25, 1991. Assuming this was true, then the statute of limitations ran on November 25, 1995. This suit was not filed in district court until April 12, 1996, over four years after Malmgren began keeping the pig.

### Restriction 14: Malmgren's Statute of Limitations Defense

Malmgren's summary judgment motion was supported by evidence establishing his statute of limitations defense as a matter of law. In addition to his own affidavit, Malmgren supported his motion with the affidavits of Norman Colston, Betty Colston, and Ann Hammond, all neighbors. Malmgren testified he brought Whoopi home on Thanksgiving 1991. He testified his neighbors have known about Whoopi for years, as he showed her to everyone when he first brought her home. He stated he has never made any efforts to hide Whoopi from his neighbors or Inverness' officers and agents.

Each of Malmgren's neighbors testified they knew about Whoopi since November 1991, when Malmgren first acquired her. They remembered Malmgren showed Whoopi to everyone. Hammond testified she spoke with Wendell Mosley, an Inverness officer, about Malmgren's keeping Whoopi, when Mosley contacted her to inquire about it. The Colstons and Hammond each testified they never complained about Whoopi.

Malmgren also produced deposition excerpts of Inverness president Delight Flanagan, Inverness' former block captain coordinator Wanda Elder, Inverness' treasurer James Livergood, and Inverness' vice president (and former president) Mosley.

Flanagan testified that Inverness officers were responsible for reporting violations of deed restrictions to Inverness, and that as president she expected her fellow officers to report violations. Malmgren produced other evidence to show violations were required to be reported promptly. In particular, Malmgren produced evidence of a letter sent by one of Inverness' past presidents which notified residents of the deed restrictions and asked them to make "a prompt report" of any violations because "it is much easier to correct a violation as soon as it occurs than to wait a long time before filing a complaint."

Elder testified she was Inverness' block captain coordinator for many years, including 1991 and 1992. She distinctly remembered watching Whoopi eat watermelon when Malmgren first acquired her in 1991. Elder said she did not doubt that Thanksgiving 1991 was the time Malmgren brought his pig home. Elder was familiar with Inverness' deed restrictions, and as the block captain coordinator she had the power to report violations.

■ Malmgren claims Inverness is bound by the knowledge of its agent, Elder. Malmgren is correct. Under general principles of agency law, notice to an agent is deemed notice to the principal. See Polland & Cook v. Lehmann, 832 S.W.2d 729, 738 (Tex. App.—Houston [1st Dist.] 1992, writ denied). Therefore, Elder's knowledge from Thanksgiving 1991 is imputed to Inverness.

On this record, Malmgren established his statute of limitations defense as a matter of law. See Rose, 816 S.W.2d at 810 (stating to prove the defense as a matter of law, the defendant must prove when the cause of action accrued). The undisputed evidence showed he first acquired the pig on Thanksgiving 1991, and someone with the responsibility to report deed restriction violations to Inverness (Elder) did not. The evidence produced showed the Inverness suit was not filed until April 12, 1996, which is more than four years after the cause of action accrued.

Once Malmgren met his burden as movant, the burden shifted to Inverness to present issues precluding summary judgment. City of Houston v. Clear Creek, 589 S.W.2d 671, 678 (Tex.1979). Inverness presented two arguments to the trial court, but neither argument was sufficient to defeat Malmgren's motion.

First, Inverness argued there was a genuine issue of material fact as to when In-

verness acquired knowledge of the alleged violation for the cause of action to accrue. Inverness argued, without offering any supporting evidence, that November 1991 was not necessarily the date the cause of action accrued. Inverness relies on authority to show the date such knowledge was acquired is a question of fact. *See Buzbee*, 737 S.W.2d at 368; *Park*, 572 S.W.2d at 795; *Hidden Valley Civic Club v. Brown*, 702 S.W.2d 665, 668 (Tex.App.—Houston [14th Dist.] 1985, no writ). These cases are distinguishable because they involved trial on the merits where conflicting evidence was presented. However, this case involves summary judgment where the movant's evidence was not contradicted. If there was a factual issue to preclude summary judgment, Inverness was required to present it in a response to Malmgren's motion for summary judgment. *See City of Houston*, 589 S.W.2d at 678; *Marchal v. Webb*, 859 S.W.2d 408, 412 (Tex.App.—Houston [1st Dist.] 1993, writ denied) (burden shifts to nonmovant on summary judgment once movant has established its right to summary judgment).

■ Second, Inverness argued to the trial court that, assuming the cause of action accrued on November 25, 1991, the statute of limitations was tolled when it filed suit in the justice court on November 8, 1995. In making this argument, Inverness relied on Civil Practice and Remedies Code section 16.064, which states:

(a) The period between the date of filing an action in a trial court and date of a second filing of the same action in a different court suspends the running of the applicable statute of limitations for the period if

(1) *because of lack of jurisdiction in the trial court where the action was first filed, the action is dismissed or the judgment is set aside or annulled in a direct proceeding; and*

(2) not later than the 60th day after the date the dismissal or other disposition becomes final, the action is commenced in a court of proper jurisdiction.

(b) This section does not apply if the adverse party has shown in abatement that the first filing was made with intentional disregard of proper jurisdiction.

(Emphasis added). Before section 16.064 can apply, the first case to be filed must be dismissed "because of a lack of jurisdiction." Inverness claimed it voluntarily non-suited its suit in the justice court because the justice court did not have the power to grant the injunctive relief it sought. Inverness argues this is equal to the suit being dismissed because of a lack of jurisdiction. We disagree.

According to Government Code section 27.034, the justice court did have jurisdiction over suits relating to the enforcement of a deed restriction. The relevant subsections of section 27.034 state:

(a) A justice court has jurisdiction of suits relating to enforcement of a deed restriction of a residential subdivision that does not concern a structural change to a dwelling.

\* \* \*

(d) The jurisdiction provided by this section is concurrent with the jurisdiction of the district court.

Tex. Gov't.Code § 27.034. These sections make it clear the justice court had jurisdiction of Inverness' suit to enforce its deed restrictions. Because the jurisdiction of the justice court is "concurrent" with the district court, under section 27.034(d), the justice court has the power to grant injunctive relief in this type of deed restriction case. *See* Tex. Const. art. 5, §§ 8, 16; Tex. Gov't.Code. § 27.034(d). Thus, Inverness' argument that it voluntarily non-suited its case because the justice court could not grant the requested injunctive relief is without merit.[3]

---

3. Even if the justice court did not have the power to grant injunctive relief, the statute of limitations was not tolled under section 16.064 by Inverness' voluntarily nonsuiting the case. A voluntary dismissal is not equivalent to a dismiss-

al for lack of jurisdiction. *See Dalo v. Laughlin*, 636 S.W.2d 585, 589–90 (Tex.App.—San Antonio 1982, no writ) (case voluntarily nonsuited rather than dismissed for want of jurisdiction did not toll the statute of limitations under the language

We find Inverness' suit was not dismissed for a lack of jurisdiction; therefore, the statute of limitations was not tolled by Inverness' suit in the justice court.

We sustain Malmgren's issues seven and eight.

### Attorney's Fees

In issue nine, Malmgren claims the trial court erred by awarding Inverness summary judgment on its claim for attorney's fees because there was a genuine issue of material fact. Inverness agrees this was error. Therefore, we sustain issue nine.

### Malmgren's Counterclaim Based on Restriction 16b

In issues eleven and twelve, Malmgren complains of errors relating to his counterclaims. Both parties have agreed that Malmgren's counterclaims are pending in the trial court, and not properly before us. Therefore, we do not consider issues eleven and twelve.

### Conclusion

We reverse the summary judgment for Inverness on its deed restriction claim and attorney's fees, we grant Malmgren's motion for summary judgment on his statute of limitations defense, and we render judgment that Inverness take nothing against Malmgren.

of a statute identical to section 16.064). Once Inverness voluntarily nonsuited its case, it abandoned its claim and it was as if it had never been instituted. *Id.*; *Poole v. Goode,* 442 S.W.2d 810, 812–13 (Tex.App.—Houston [14th Dist.] 1969, writ ref'd n.r.e.). Thus, Inverness' reliance on the tolling statute to toll the limitations period is misplaced.