Marion TOAL, Appellant,

v.

Paul SMITH, As Independent Executor
for the Estate of Earl James Smith
and Katie Bessie Smith, Appellees.

No. 10–00–049–CV.

Court of Appeals of Texas,
Waco.

Aug. 1, 2001.

Jason Willett, Hinds & Willett, Waxahachie, for appellant.

David A. Miller, Miller & Lehman, Palmer, David A. MacDonald, Miller & Lehman, Dallas, for appellee.

Before Chief Justice DAVIS, Justice VANCE, and Justice BOBBY L. CUMMINGS (Retired).

## OPINION

BOBBY L. CUMMINGS, Justice (Retired).

This is an appeal from a verdict finding the existence of a prescriptive easement and failing to find abandonment of that easement. The owner of the land on which the easement lies, Marion Toal, challenges the legal and factual sufficiency of the evidence to support the jury's findings. We will affirm the judgment.

## FACTS

Jim Smith built a home on a tract of land in Ellis County in 1901. From 1901 until 1981, Smith and his descendants (the Smiths) lived in this house and used a driveway [the easement] built on leased land to access the house. That land was leased from a railroad company under a "pasture lease" and includes land north of the Smith homestead. The Smiths used the easement until 1981, when the home was abandoned.[1]

The lease with the railroad was for a term of 100 years, expected to expire in 2001. However, after the Smith homestead became unoccupied in 1981, Marion Toal approached the railroad and requested that it cancel the Smith lease. The railroad agreed, cancelled the Smith lease, and entered into a new lease with Toal. Toal leased the land until 1992, when he purchased it from the railroad. Paul Smith (Paul) visited the Smith property periodically during this time, but no one lived there. When Paul again visited the Smith homestead in 1995, Toal informed him that he now owned the entire tract of land in front of the Smith homestead, including the easement, and the Smiths had no right to use the land for access to the home. After some consideration, Paul offered to buy the land in front of the homestead, but Toal was unwilling to sell it. Paul brought suit on behalf of his parents, Earl and Bessie[2], alleging easement by prescription, easement by estoppel, and misrepresentation.

The court entered a directed verdict on the issues of easement by estoppel and fraud and submitted the issue of easement by prescription to the jury. The jury found that the Smiths had acquired an easement by prescription and that the easement had never been abandoned. Paul was awarded an ingress-egress easement plus attorney's fees. Toal appeals, asserting that the evidence is legally and factually insufficient to support the jury's findings.

## NO–EVIDENCE POINT

 When the complaining party raises a "no-evidence" point[3] challenging

---

1. The Smiths quarreled over the land which eventually ended in a suit to partition it. The descendant who was living in the house prior to 1981 apparently moved out because of the disagreement. Earl and Bessie Smith were awarded the homestead and their son, Paul, brought this suit on behalf of their estate.

2. Paul Smith testified that his mother went by "Bessie."

3. We use the terminology suggested in William Powers, Jr. & Jack Ratliff, *Another Look at "No Evidence" and "Insufficient Evidence,"* 69 TEX. L.REV. 515, 517–19 (1991); *see also Raw Hide Oil & Gas, Inc. v. Maxus Explora-*

the legal sufficiency of the evidence to support a finding that favors the party who had the burden of proof on that finding at trial, the reviewing court must overrule the challenge if, considering only that evidence and the inferences which support the finding in the light most favorable to the finding and disregarding evidence and inferences to the contrary, any probative evidence supports it. *Browning–Ferris, Inc. v. Reyna*, 865 S.W.2d 925, 928 (Tex. 1993). Thus, if more than a scintilla of evidence supports the finding, the no-evidence challenge fails. *Id.* "When the evidence offered to prove a vital fact is so weak as to do no more than create a mere surmise or suspicion of [the fact's] existence, the evidence is no more than a scintilla and, in legal effect, is no evidence." *Heldenfels Bros., Inc. v. City of Corpus Christi*, 832 S.W.2d 39, 41 (Tex. 1992).

■ A no-evidence point can only be sustained when the record reveals one of the following: (1) a complete absence of evidence of a vital fact; (2) rules of law or rules of evidence bar the appellate court from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a scintilla; or (4) the evidence conclusively establishes the opposite of a vital fact. *Juliette Fowler Homes, Inc. v. Welch Assoc., Inc.*, 793 S.W.2d 660, 666 n. 9 (Tex.1990) (citing Calvert, *"No Evidence" and "Insufficient Evidence" Points of Error*, 38 Tex. L.Rev. 361, 362–63 (1960)).

■ If both "no-evidence" and "insufficient-evidence" points are asserted, an appellate court should rule on the no-evi-

dence point first. *Marshall v. Ford Motor Co.*, 878 S.W.2d 629, 631 (Tex.App.—Dallas 1994, no writ) (citing *Glover v. Texas Gen. Indemn. Co.*, 619 S.W.2d 400, 401 (Tex. 1981)).

■ If a "no evidence" point is sustained and the proper procedural steps have been taken, the finding under attack may be disregarded entirely. *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex.1965).

## FACTUALLY INSUFFICIENT EVIDENCE POINT

■ In reviewing an "insufficient-evidence" point [4] challenging the factual sufficiency of the evidence to support a finding that favors the party who had the burden of proof on that finding, the reviewing court should overrule the challenge unless a review of all the evidence, both for and against the finding, demonstrates that the finding is clearly wrong and manifestly unjust. *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex.1965). Reversal could occur because the finding was based on weak or insufficient evidence or because the proponent's proof, although adequate if taken alone, is overwhelmed by the opponent's contrary proof. William Powers, Jr. & Jack Ratliff, *Another Look at "No Evidence" and "Insufficient Evidence,"* 69 Tex. L.Rev. 515, 519 n. 11 (1991).

■ When reviewing a jury verdict to determine the factual sufficiency of the evidence, the court of appeals must consider and weigh all the evidence, and should set aside the verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust.

---

tion Co., 766 S.W.2d 264, 275–76 (Tex.App.—Amarillo 1988, writ denied).

4. We use the terminology suggested in William Powers, Jr. & Jack Ratliff, *Another Look at "No Evidence" and "Insufficient Evidence,"*

69 Tex. L.Rev. 515, 517–19 (1991); *see also Raw Hide Oil & Gas v. Maxus Exploration*, 766 S.W.2d 264, 275–76 (Tex.App.—Amarillo 1988, writ denied).

*Cain v. Bain,* 709 S.W.2d 175, 176 (Tex. 1986); *In re King's Estate,* 150 Tex. 662, 664–65, 244 S.W.2d 660, 661 (1951).

■ We have a duty to review the entire record. *See In re King's Estate,* 150 Tex. 662, 244 S.W.2d 660, 661 (1951). We must, if reversing for factual insufficiency, detail the evidence relevant to the issue in consideration and state why it is factually insufficient or so against the great weight and preponderance of the evidence as to be manifestly unjust; why it shocks the conscience; or why it clearly demonstrates bias. *Jaffe Aircraft Corp. v. Carr,* 867 S.W.2d 27, 28 (Tex.1993); *Pool v. Ford Motor Co.,* 715 S.W.2d 629, 635 (Tex.1986).

■ Factual insufficiency of the evidence does not, however, authorize an appellate court to disregard a finding entirely or make a contrary finding in entering a final judgment for one of the parties. *Garza,* 395 S.W.2d at 823.

## EASEMENT BY PRESCRIPTION

■ To burden a party's land with an easement by prescription, the plaintiff must show that his use of the land was: (1) open and notorious; (2) adverse to the owner's claim of right; (3) exclusive; (4) uninterrupted; and (5) continuous for a period of ten years. *Brooks v. Jones,* 578 S.W.2d 669, 673 (Tex.1979); *Johnson v. Dale,* 835 S.W.2d 216, 218 (Tex.App.—Waco 1992, no writ); *Wiegand v. Riojas,* 547 S.W.2d 287, 289 (Tex.Civ.App.—Austin 1977, no writ). Burdening another's property with a prescriptive easement is not well-regarded in the law. *Wiegand,* 547 S.W.2d at 289.

Toal challenges the sufficiency of the evidence to support each of the required elements for easement by prescription. Toal only acknowledges the use of the land after 1981, when he acquired the lease from the railroad. His only reference to the time prior to 1981 is found in a footnote to his brief. He states:

> Based on his assertion that the Smiths had a "Pasture Lease" with the railroad, [Paul] Smith has consistently asserted that their use of the driveway was inconsistent with and adverse to the railroad, despite the landlord-tenant relationship. No Smith lease was ever produced. Moreover, the implications and effects of that position on all of the leased agriculture land in Texas is mind boggling.

Paul contends that the use of the leased land from 1901 and continuing until 1995, or any ten year time period between, met the requirements of use to obtain a prescriptive easement. He asserts that the Smith family acquired the easement long before Toal bought the property from the railroad. Thus, we are faced with two periods of time during which this prescriptive easement could have been acquired, 1901–1981 and 1981–1995. We first consider whether a prescriptive easement was acquired during the period when the Smiths leased the land from the railroad, 1901 until 1981.

## PRESCRIPTIVE EASEMENT ON LEASED LAND: 1901–1981

Initially, we consider whether a prescriptive easement may be acquired on leased land. Toal asserts that it cannot be and relies on *Sassman v. Collins* and *Boles v. Red* to support this assertion. *Sassman v. Collins,* 53 Tex.Civ.App. 71, 115 S.W. 337, 339 (1908, writ ref'd); *Boles v. Red,* 227 S.W.2d 310, 316 (Tex.Civ.App.—Eastland 1950, writ ref'd).

In *Sassman,* the court considered whether the use of property for ingress and egress had been adverse to the owner of the land. The court stated:

> Again, a continuity of the possession in this case, even if it could be conceded to

have been otherwise adverse, was broken, because during six or seven years of the time that appellees were exercising the right to pass thereover they were shown to have been tenants of the owner or owners of said tract of land over which the passway was claimed. The possession and user of the tenant is the possession and user of the landlord, and therefore cannot be adverse. It is held that where the owner of the dominant estate has been the tenant of the owner of the servient estate, and had control over the servient estate as such tenant, the period of such tenancy must be excluded in computing the prescriptive period.

*Sassman*, 115 S.W. at 339 (citations omitted). We agree that this is the general proposition, but disagree that *Sassman* controls here. The court states that where the tenant *had control over the servient estate*, the period of tenancy must be excluded in computing the prescriptive period. *Id. Sassman* implies no limitation on the lease in question. Likewise, in *Boles* there was no discussion of a limited lease. Here, the Smiths arguably did not have control over the land on which the easement was built because the lease limited their use of the land to using it as pasture.

■ More recently, the Supreme Court has stated that a tenant *may* acquire an easement by prescription once "the tenancy has been repudiated, and notice of such repudiation has been brought home to the titleholder." *Tex–Wis Co. v. Johnson*, 534 S.W.2d 895, 899 (Tex.1976). Notice of repudiation does not have to be actual, but may be made by inference by using the land "inconsistent with the original use of the property...." *Id.* at 901.

■ In *Dalo v. Laughlin*, a tenant asserted adverse possession through repudiation of his lease.[5] 636 S.W.2d 585 (Tex. App.—San Antonio 1982, no writ). Dalo, the record owner of the land in dispute, lived in Pennsylvania but leased twenty acres to C. Fast for grazing cattle. Years later, the entire leasehold was sold to Arthur Balzer, who continued using the land for cattle grazing until 1955, when he gave the acreage to his son-in-law, Clyde Schuchert. *Id.* at 587. The lease required the land to be used for cattle grazing but Schuchert engaged in other activities such as digging a pond, plowing roots, planting grass, and building fences. Thus, his use was inconsistent with the lease and sufficient to put Dalo on notice that he was repudiating it. *Id.* at 588.

■ Accordingly, by using land in a manner inconsistent with the purpose for which the land is leased, a leasee may acquire a prescriptive easement, provided all of the elements for establishing the easement are met.

■ The Smith lease was not produced at trial, however Paul testified that it was a "pasture lease," identical to that acquired by Toal in 1981. That lease was admitted into evidence. It is entitled "Pasturage Lease" and limits the authorized use of the land to "pasturage purposes." Paul stated that Toal testified in a deposition that his lease was the same as the Smith lease and, thus, the language regarding using the land for "pasturage purposes" was identical. There was no objection.

Paul testified that his family openly used the easement from 1901–1981 without interruption and never used the land as pasture. The Smiths also used the easement

---

**5.** The adverse nature of acquiring an easement by prescription is the same as establishing title by adverse possession. *See Othen v. Rosier*, 148 Tex. 485, 226 S.W.2d 622, 626 (1950).

to the exclusion of anyone else. He personally used the easement approximately 30 times a year when he was a child, and then "several times a year" after that until 1975. The easement could be seen in plain view, and is visible in the aerial photographs introduced at trial. Thus, there is a necessary inference of repudiation of the lease and notice of that repudiation to the railroad. *Dalo*, 636 S.W.2d at 588. He further stated that the railroad never used the easement. Considering only the evidence and inferences which support the finding in the light most favorable to the finding and disregarding evidence and inferences to the contrary, we find probative evidence to support it. *Browning–Ferris, Inc.*, 865 S.W.2d at 928. Thus, issues one and two are overruled.[6] There is no evidence controverting Smith's testimony regarding the use of the land prior to 1981. Therefore, we do not find the jury's verdict to be so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Cain*, 709 S.W.2d at 176. Issue three is overruled. Because we have determined that the evidence is sufficient to support a finding that the Smiths acquired an easement by prescription during the time between 1901 and 1981, we do not consider whether the events post 1981 were sufficient to support a finding that they acquired the easement during that time.

## ABANDONMENT OF THE EASEMENT

In his last issue, Toal asserts that, because the Smiths essentially abandoned their homestead in 1981 and rarely visited the property after that, they lost their right to access the land. Additionally, Toal asserts, his "consistent use and

modification of the land, and undisputed ownership of the land further supports [abandonment]." His complaint is one of insufficient evidence. We note that Toal fails to cite any authority on abandonment, but merely states that the argument in the prior issues along with the record "fairly address and support his final point of error."

The intent to abandon an easement "must be established by clear and satisfactory evidence." *Milligan v. Niebuhr*, 990 S.W.2d 823, 826 (Tex.App.—Austin 1999, no pet.) (citing *Dallas County v. Miller*, 140 Tex. 242, 166 S.W.2d 922, 924 (1942)). Abandonment of an easement will *not* result from non-use alone; instead, the "circumstances must disclose some definite act showing an intention to abandon and terminate the right possessed by the easement owner." *Id.*

Because mere non-use is insufficient to show abandonment of an easement, and because Toal has not identified any evidence showing that the Smiths intended to abandon the easement, we cannot say the verdict is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Cain*, 709 S.W.2d at 176. Issue four is overruled.

## CONCLUSION

Having overruled each issue presented, we affirm the judgment.

---

6. In issue one, Toal alleges that there is "no evidence to support submission of issue to jury." Issue two asserts that there is "no evidence to support jury response." Both issues complain about the legal-insufficiency of the evidence and have been addressed simultaneously.