

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

## No. 06-10-00130-CV

_____


SHERYL "GENE" MCCLUNG, ET AL., Appellants

V.

IRENE AYERS, Appellee


On Appeal from the 62nd Judicial District Court
Franklin County, Texas
Trial Court No. 10,921


Before Morriss, C.J., Carter and Moseley, JJ.
Opinion by Chief Justice Morriss

OPINION

For decades, the McClung family reached their landlocked property in Franklin County, Texas, by crossing through a neighboring property owned by the Ayers family. In 2000, Irene Ayers, sole owner of the Ayers property at that time, refused to let the McClungs cross her property any longer. In July 2009, after trying other options to access their property, the McClungs filed suit against Ayers, alleging that they had established an easement across her property by at least one of four alternative theories—prescription, estoppel, necessity, and implication. The jury found that no easement existed under any of the four theories. On appeal, the McClungs attack each of the four findings on both legal and factual sufficiency grounds. We affirm the judgment of the trial court because legally and factually sufficient evidence supports each of the jury findings.

Before we discuss the issues, we provide a little background.

The Ayers land adjoins the McClung property. The McClung property is landlocked, whereas the Ayers land is adjacent to a public roadway. The McClungs have owned the property since 1911, though no one has lived on it since 1929. Since 1929, the McClungs have used the property a few times per year for hunting, fishing, and camping.

Ayers' predecessors in title, her family, purchased the Ayers property in 1945. Ayers, herself, ceased living on the property in 1974 or 1975. Later, after the death of her father, Ayers obtained consolidated title to the property through her mother's and her father's remaining heirs.

Ayers' property was vacant from 1996 through 2007.

For decades, different members of the McClung family crossed Ayers' property to reach their own. The McClungs argue that it is the only way in or out. Gene McClung, sixty-one years of age, remembers going across Ayers' property to reach their land when he was eight–ten years old. They did not go there frequently, just a few times every couple of years.

In 2000, Ayers locked a gate across her property and refused to allow the McClungs to cross. Gary Buck, a neighboring landowner and Ayers' relative, temporarily gave the McClungs permission to cross his land to reach theirs. However, in 2004, Buck withdrew his permission. In his revocation letter, he noted that the McClungs have "historically" accessed their property through the Ayers land.

The McClungs tried, but failed, to obtain permission or an easement to cross other neighboring properties. With no way into their property, the McClungs filed suit against Ayers, alleging, alternatively, four theories supporting the finding of an easement. After the jury found no easement, the McClungs' motions for judgment notwithstanding the verdict and new trial were denied, and this appeal was filed, challenging the legal and factual sufficiency of the evidence to support the jury's findings on each of the four grounds.

When a party challenges the legal sufficiency of the evidence to support an adverse finding on which he or she had the burden of proof, the party must show that the evidence establishes a matter of law all vital facts in support of the issue. *In re Estate of Steed*, 152 S.W.3d 797, 806

3

(Tex. App.—Texarkana 2004, pet. denied) (citing *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex. 2001)). Evidence is legally sufficient if it "would enable reasonable and fair-minded people to reach the verdict under review." *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). In evaluating the evidence's legal sufficiency, "we credit evidence that supports the verdict if reasonable jurors could, and disregard contrary evidence unless reasonable jurors could not." *Kroger Tex. Ltd. P'ship v. Suberu*, 216 S.W.3d 788, 793 (Tex. 2006) (citing *Wilson*, 168 S.W.3d at 827; *Am. InterState Ins. Co. v. Hinson*, 172 S.W.3d 108, 114 (Tex. App.—Beaumont 2005, pet. denied)). We sustain legal sufficiency challenges "when, among other things, the evidence offered to establish a vital fact does not exceed a scintilla." *Suberu*, 216 S.W.3d at 793. "Evidence does not exceed a scintilla if it is 'so weak as to do no more than create a mere surmise or suspicion' that the fact exists." *Id*. (quoting *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 601 (Tex. 2004)).

When a party attacks the factual sufficiency of an adverse finding on an issue on which it has the burden of proof, it must demonstrate on appeal that the adverse finding is against the great weight and preponderance of the evidence. *Dow Chem. Co.*, 46 S.W.3d at 242. In determining factual sufficiency, we must consider and weigh all of the evidence, and can set aside a verdict only if the evidence is so weak or if the finding is so against the great weight and preponderance of the evidence that it is clearly wrong and unjust. *Id*.; *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986); *Croucher v. Croucher*, 660 S.W.2d 55, 58 (Tex. 1983).

4

*(1)    Sufficient Evidence Supports the Jury's Finding Against a Prescriptive Easement*

The McClungs attack the jury's failure to find a prescriptive easement. As claimants seeking to establish an easement by prescription, the McClungs must have shown that their use of the Ayers land was: (1) open and notorious, (2) adverse to the owner's claim of right, (3) exclusive, (4) uninterrupted, and (5) continuous for a period of ten years. *See Toal v. Smith*, 54 S.W.3d 431, 435 (Tex. App.—Waco 2001, pet. denied). If there is a failure to establish any of these essential elements by a preponderance of the evidence, the claim of easement cannot be maintained. *Brooks v. Jones*, 578 S.W.2d 669, 674 (Tex. 1979). There is ample evidence that the McClungs crossed the Ayers property openly for an uninterrupted period of more than ten years. Though all issues are disputed, the primary issues are the elements of adversity and exclusivity, elements that are closely related and thus discussed together.

Burdening another's property with a prescriptive easement is not well-regarded in the law. *Toal*, 54 S.W.3d at 435. The hostile and adverse character of the use is the same as that necessary to establish title by adverse possession. *Id.* One test to determine whether a claim is hostile is whether the claimant's use, occupancy, and possession of the land is of such a nature and character as to notify the true owner that the claimant is asserting a hostile claim. *Mack v. Landry*, 22 S.W.3d 524, 531 (Tex. App.—Houston [14th Dist.] 2000, no pet.); *Stallman v. Newman*, 9 S.W.3d 243, 248 (Tex. App.—Houston [14th Dist.] 1999, pet. denied). Use by express or implied permission, no matter how long continued, cannot ripen into an easement by prescription since

5

adverse use is lacking. *Machala v. Weems*, 56 S.W.3d 748, 760 (Tex. App.—Texarkana 2001, no pet.).

It has long been the law in Texas that, when a landowner and the claimant of an easement both use the same way, the use by the claimant does not exclude the owner's use and therefore will not be considered adverse. *Brooks*, 578 S.W.2d at 673; *see also Vrazel v. Skrabanek*, 725 S.W.2d 709, 711 (Tex. 1987). The easement claimant must exclude, or attempt to exclude, all other persons, including the true property owner, from using the roadway. *Stallman*, 9 S.W.3d at 249. Joint continuous use, without a legally adverse or hostile act, is not sufficient to establish a prescriptive easement. *Mack*, 22 S.W.3d at 532; *Vrazel*, 725 S.W.2d at 709.

Here, Gene and Truman McClung testified that, despite decades of crossing the Ayers property, the McClungs never asked for permission to do so. Buck's revocation letter says that the McClungs have historically reached their property by crossing the Ayers land. However, one of the McClungs' witnesses, Johnny Grubbs, who, on several occasions, had crossed the Ayers property with the McClungs, testified that "[the Ayerses] give us access to go through there, their home," and that the McClungs "had permission from the lady, Ms. Ayers, all the time." Ayers testified that she, personally, allowed the McClungs to cross the property two or three times. In the past, the McClungs "would stop and ask" and speak to her father. She agreed that her family was always gracious about letting the McClungs cross their property. There is no evidence that the McClungs excluded or attempted to exclude other persons from using any roadway across the

6

Ayers property.

There is conflicting evidence regarding whether the McClungs were given permission to cross the Ayers land. It is the function of the jury to pass on the weight of the evidence and the credibility of the witnesses; and, where there is conflicting evidence, the jury verdict on such matters is generally regarded as conclusive. *Wilson*, 168 S.W.3d at 827; *see Lambright v. Trahan* 322 S.W.3d 424, 430 (Tex. App.—Texarkana 2010, pet. denied). This Court cannot substitute its judgment for that of the jury. *Id*. The McClungs failed to prove a prescriptive easement as a matter of law because there is more than a scintilla of evidence supporting the jury's finding that the McClungs' use was permissive. *Suberu*, 216 S.W.3d at 793. The jury was free to believe Ayers and Grubbs and to disbelieve the McClungs. Therefore, we are unable to say that the jury's verdict is against the great weight and preponderance of the evidence. Accordingly, we overrule the points of error attacking the jury's finding that there was no prescriptive easement.

*(2)*      *Sufficient Evidence Supports the Jury's Finding Against an Easement by Estoppel*

The McClungs also assail the jury's failure to find an easement by estoppel. An easement, as a general rule, is required to be in writing, under the statute of frauds. *Machala*, 56 S.W.3d at 756; *see* Kirk Kuykendall, *Easements—Licenses—Statute of Frauds—Estoppel—Creation of Easements by Oral Agreement*, 13 BAYLOR L. REV. 180 (1961). An exception to this general rule is the doctrine of easement by estoppel, a creature of equity designed to prevent injustice and protect innocent parties from fraud. *Machala*, 56 S.W.3d at 756; *Stallman*, 9 S.W.3d at 247;

*Shipp v. Stoker*, 923 S.W.2d 100, 102 (Tex. App.—Texarkana 1996, writ denied). This doctrine is not clearly defined, and its application depends on the facts of each case. *Machala*, 56 S.W.3d at 756; *Drye v. Eagle Rock Ranch, Inc.*, 364 S.W.2d 196, 209 (Tex. 1962); *Stallman*, 9 S.W.3d at 246. The gravity of a judicial means of acquiring an interest in land of another solely by parol requires that equitable estoppel be strictly applied[1]; *Allen v. Allen*, 280 S.W.3d 366, 381 (Tex. App.—Amarillo 2008, pet. denied) (citing *Moore County v. Bergner*, 526 S.W.2d 702, 706 (Tex. App.—Amarillo 1975, no writ)), and the estoppel "should be certain, precise and clear." *Id.* (citing *McAnally v. Friends of WCC, Inc.*, 113 S.W.3d 875, 879 (Tex. App.—Dallas 2003, no pet.)).

"The doctrine of easement by estoppel holds that the owner of the alleged servient estate may be estopped to deny the existence of an easement by making representations that have been acted upon by the owner of the alleged dominant estate." *Holden v. Weidenfeller*, 929 S.W.2d 124, 131 (Tex. App.—San Antonio 1996, writ denied). "Three elements are necessary to the creation of an easement by estoppel: (1) a representation communicated, either by word or action, to the promisee; (2) the communication was believed; and (3) the promisee relied on the communication."[2] *Id.* (citing *Storms v. Tuck*, 579 S.W.2d 447, 452 (Tex. 1979)). "These

---

[1]The doctrine of easement by estoppel has not been applied with the same strictness and conclusiveness as easements by implication. *See Drye*, 364 S.W.2d at 209.

[2]In *North Clear Lake Development Corp. v. Blackstock*, 450 S.W.2d 678 (Tex. Civ. App.—Houston [14th Dist.] 1970, writ ref'd n.r.e.), the court, in finding an easement by estoppel, also considered the fact that improvements which had been made were permanent and substantial, that such improvements were open and obvious to the owner of the

8

elements apply at the time the communication creating the alleged easement is made." *Id*. "An easement by estoppel, once created, is binding upon successors in title if reliance upon the existence of the easement continues." *Id*.

To establish the element of a representation, the McClungs rely solely on the legal fiction of representation by silence. "The principle of estoppel by silence arises where a person is under a duty to another to speak, but refrains from doing so and thereby leads the other to act in reliance on a mistaken understanding of the facts. The duty to speak does not arise until the silent party is himself aware of the facts." *Storms*, 579 S.W.2d at 452. The McClungs contend that the Ayers family had a duty to speak and, because the Ayerses never attempted to stop them or require them to stop and ask permission, that the Ayerses made a representation by silence.

Here, in their effort to establish a representation by silence, the McClungs undermine their proof of the element of belief. In this case, Ayers testified that the McClungs would "stop and

---

servient estate, that the servient estate had constructive notice of the activities of the dominant estate holders, and that such use and improvements had the tacit consent of the servient estate owners because there was no complaint made when the improvements were constructed. In *Drye*, the Texas Supreme Court noted that estoppel cases are not limited to situations involving money spent improving the servient estate, though this group does form a large part of the cases affixing easements appurtenant by estoppel. 364 S.W.2d at 210. It appears clear then that, in using this language, the Court did not intend to limit the application of the doctrine to only those situations where expenditures were made on the servient estate; it was merely recognizing that many cases did involve servient funds.

The Austin court also requires the existence of a vendor/vendee relationship. *Scott v. Cannon*, 959 S.W.2d 712, 721 (Tex. App.—Austin 1998, pet. denied). We decline to require such an element in order to establish an easement by estoppel. In one of the first cases involving the question of easement by estoppel, the Texas Supreme Court outlined the elements necessary to establish such an easement, and nowhere in the opinion is a vendor/vendee relationship required. *F.J. Harrison & Co. v. Boring & Kennard*, 44 Tex. 255, 267–68 (1875). Since the *Harrison* case, the Texas Supreme Court has never required the existence of a vendor/vendee relationship in applying the doctrine of easement by estoppel. A review of Texas cases reveals that the holding in *Scott* has been rejected by those courts that have considered the question of the necessity of a vendor/vendee relationship to establish an easement by estoppel. *See Murphy v. Long*, 170 S.W.3d 621, 627–28 (Tex. App.—El Paso 2005, pet. denied); *see also Mack*, 22 S.W.3d at 529–30) (discussing cases holding that vendor/vendee relationship not required).

ask" before using the road, and Grubbs testified that the McClungs had the Ayerses' permission to use the road. Such testimony, along with the McClungs obtaining a permissive easement from Buck after Ayers refused them access, allows the jury to infer that the McClungs did not believe they had a legal right to use the road across the Ayers property. *See Martin v. Cockrell*, 335 S.W.3d 229, 238–41 (Tex. App.—Amarillo 2010, no pet.) ("gentlemen's agreement" or "friendly neighborly permission" to use land does not support easement by estoppel).

There is also very little evidence of the element of reliance. Gene testified that, in the 1980s, he would mow the roadway. Gene has a trailer on the property, and Truman once moved a trailer there as well. Both trailers, however, were moved there across Buck's property, not the Ayers property.

The McClungs cite several cases in support of their argument, notably including *Wallace v. McKinzie*, 869 S.W.2d 592 (Tex. App.—Amarillo 1993, writ denied). In *Wallace*, the McKinzie property was landlocked by the Wallace property. *Id.* at 594. Since they purchased the property in 1920, the McKinzies used a specific road through the Wallace land to access their property because it was the only access road. *Id.* After a specific conversation about the roadway between A.D. McKinzie and Bert Wallace, A.D. cut brush near the road, tried to keep water from running in the road, and improved his property. *Id.* at 595. A.D. explained that he reached an agreement with another member of the Wallace family to place double locks on the gate in the road that allowed both families access to the road. *Id.* There was no objection to the McKinzies using

the road.  *Id.*

The McClungs also cite *Holden*, where a road was used for thirty-five years to reach landlocked property before the servient owner tried to block access to the road.   929 S.W.2d 124. The court held that an easement by estoppel was established because a prior deed implied that the dominant property had the right to use the road, the dominant owner built a home and other major improvements on his property, the dominant owner contributed to the maintenance of the road, and there was testimony that the dominant owner was allowed to put his own lock on the road's gate.

In *Exxon v. Schutzmaier*, an easement by estoppel was found to exist where Browner and his successors in interest spent significant cost and labor improving their landlocked property, and, until a few years before suit was filed, mail carriers, school buses, and delivery vehicles used the road.   537 S.W.2d 282 (Tex. App.—Beaumont 1976, no writ).   In so holding, the court noted that Browner previously obtained a 600-foot easement from Exxon for the express and sole purpose of reaching the access road from which Exxon was presently trying to exclude Browner's successor in interest, Schutzmaier.

These cases are distinguishable from the present case.  Here, there is no representation from the servient owner, be it via conversation, prior deeds or documents implying a right of use, or actions such as allowing the servient owner to put his own lock on an access gate.   While the jury is free to infer a representation by silence, they are likewise free not to do so.   Similarly, the dominant owners in the above cases took significant actions in reliance, such as significantly

11

improving their property and/or the road, whereas here, the McClungs had two trailers and utility access on their property, but both were placed there not across the disputed roadway or the Ayers land, but across different neighboring properties. There is no evidence that the McClung property was purchased with the understanding that the McClungs could use a road across what would become the Ayers land. In this case, there is evidence indicating that the McClungs did not believe they had a right to use the road, because there is testimony that they always "stopped and asked," even though Gene characterized it as a courtesy.

Based on this record, the McClungs have failed to meet their burden on appeal regarding their challenges to the legal and factual sufficiency of the evidence. *See Wilson*, 168 S.W.3d at 827. There is conflicting evidence regarding the existence or nonexistence of a representation, belief, and reliance on such belief. Therefore, the McClungs have failed to prove an easement by estoppel as a matter of law. Likewise, we cannot say that the jury's failure to find an easement by estoppel is so weak or so against the great weight and preponderance of the evidence that it is clearly wrong and unjust. *See Dow Chem.*, 46 S.W.3d at 242. Accordingly, we overrule the McClungs' challenges intended to obtain an easement by estoppel.

*(3)    Sufficient Evidence Supports the Jury's Finding Against an Easement by Necessity*

The McClungs further argue that the jury's failure to find an easement by necessity was error, based on legal and factual sufficiency grounds.

Texas caselaw establishes that, when a grantor conveys part of a tract of land while

12

retaining the remaining acreage for himself or herself, there is an implied reservation of a right of way by necessity on the land conveyed, when no other access exists. *Bains v. Parker*, 182 S.W.2d 397 (Tex. 1944). In order to establish an implied easement by necessity, a party must establish (1) unity of ownership of the dominant and servient estates before severance,[3] (2) the necessity of a roadway, and (3) existence of the necessity when the estates were severed. *Koonce v. Brite Estate*, 663 S.W.2d 451, 452 (Tex. 1984); *Machala*, 56 S.W.3d at 755; *Daniel v. Fox*, 917 S.W.2d 106, 111 (Tex. App.—San Antonio 1996, writ denied). The way of necessity must be more than one of convenience; in other words, if the owner of the land can use another way, he or she cannot claim an easement by implication. *Duff v. Matthews*, 311 S.W.2d 637, 640 (Tex. 1958); *Machala*, 56 S.W.3d at 755.

The McClungs argue that there was a necessity at the time of patenting, that is, when the common owner, Texas, severed the properties into two different surveys. The McClung land was patented in 1896, as part of the Doxey Survey. The Ayers land was patented thirty-six years earlier, in 1860. There is no evidence that a road was necessary in 1860 or 1896.

The McClungs have failed to establish as a matter of law the requisite elements of an easement by necessity. Further, the jury's determination that the McClungs did not establish such

---

[3]At trial and here on appeal, the McClungs argue that the State of Texas is the previous common owner of the two tracts. Other than the State, no common owner, before or at the time of severance, appears in the evidence. The McClungs do not cite any caselaw to support their argument that the State may be used as a prior common owner, and we are aware of none. However, the jury instructions at trial stated that "the Court has previously determined that there was a previous unity of ownership of the dominant and servient estates." The McClungs failed to object to the instruction at trial, so we must accept the trial court's finding.

requisite elements was not so against the great weight and preponderance of the evidence as to be manifestly wrong and unjust. We overrule the points of error regarding an easement by necessity.[4]

*(4)    Sufficient Evidence Supports the Jury's Finding Against an Easement by Implication*

Finally, the McClungs argue that the jury's failure to find an easement by implication was not supported by the evidence. An easement may be implied from what "a grantor and grantee must have intended had they both given the obvious facts of the transaction proper consideration." *Drye*, 364 S.W.2d at 207. An easement implied from prior use requires (1) unity of ownership of the dominant and servient estates when the estates are severed and (2) that the dominant estate's use of the servient estate was continuous, apparent at the time the estates were severed, and (3) reasonable necessity of the easement to the use and enjoyment of the land granted. *See Bickler v. Bickler*, 403 S.W.2d 354, 357 (Tex. 1966); *Daniel*, 917 S.W.2d at 110.

The points of error regarding an easement by implication suffer from similar deficiencies as those regarding an easement by necessity. There is no evidence that the McClungs' use of the Ayers property was continuous or apparent at the time the estates were severed, nor is there evidence that the use was reasonably necessary at that time in order to enjoy the McClung land. The jury was within its province not to infer such facts or conclusions from the evidence presented at trial. Accordingly, we overrule the points of error relative to an easement by implication.

---

[4]A 1964 United States Geologic Survey map shows what appears to be a road going through the Ayers property in the same approximate location as the road to which the McClungs now claim an easement. While one could argue that the jury could infer that a road was necessary at that time, the jury was also free not to do so.

We affirm the judgment.

Josh R. Morriss, III
Chief Justice

Date Submitted:     September 28, 2011
Date Decided:       October 25, 2011