

# In the
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-24-00029-CV

ANDREW HOUGH AND BOPHA HOUGH, Appellants

V.

LPG HOUSE LIMITED LIABILITY COMPANY, Appellee

On Appeal from the 415th District Court
Parker County, Texas
Trial Court No. CV22-0751

Before Stevens, C.J., van Cleef and Rambin, JJ.
Memorandum Opinion by Chief Justice Stevens

## MEMORANDUM OPINION

This case involves a dispute over a sewage pipeline that allegedly ran from Andrew and Bopha Hough's home and underneath property owned by LPG House Limited Liability Company (LPG) before attaching to the City of Weatherford's main sewer line. The record shows that, while redeveloping its property, LPG hit a sewer line and capped it. The Houghs alleged that that action resulted in the loss of sewer service to their home for three weeks. They sued LPG for private nuisance and intentional infliction of emotional distress, sought to establish an easement on LPG's property for the sewer line, and asked for mental-anguish damages.

The trial court granted LPG's no-evidence motions for summary judgment on the Houghs' easement and intentional infliction of emotional distress claims. After a bench trial, in which the Houghs represented themselves on the issue of private nuisance, the trial court entered a take-nothing judgment in favor of LPG.

On appeal, the Houghs argue that the trial court erred by (1) granting LPG's no-evidence motions for summary judgment on their easement by estoppel, easement by prescription, and intentional infliction of emotional distress claims, (2) failing to grant a continuance, and (3) disallowing evidence of mental anguish at the bench trial.[1] We find that the trial court's summary judgments were proper and that it did not abuse its discretion by either failing to grant a continuance of the trial or by disallowing evidence of mental-anguish damages at trial. Accordingly, we affirm the trial court's judgment.

---

[1] Originally appealed to the Second Court of Appeals, this case was transferred to this Court by the Texas Supreme Court pursuant to its docket equalization efforts. *See* TEX. GOV'T CODE ANN. § 73.001 (Supp.). We follow the precedent of the Second Court of Appeals in deciding the issues presented. *See* TEX. R. APP. P. 41.3.

## I.  Factual and Procedural Background

In 2003, the Houghs purchased property located at 215 East Josephine Street, Weatherford, Texas, 76086 (the Houghs' Property).  Their deed made no mention of a sewer easement.  Even so, the Houghs believed that their "sewage lines . . . likely went under" an adjoining property purchased by LPG for purposes of redevelopment and located at 302 East Lee Street in Weatherford (LPG Property).

During LPG's renovation, the Houghs "noticed holes in the fence where trees were removed" and believed the fence was on their property line.  According to an affidavit filed by Andrew, on June 20, 2022, LPG "hit a PVC pipe" during construction.  LPG's owner, Laura Gloor, "capped off" the pipe and notified the Houghs.  Soon after, the Houghs' plumbing in their home became backed up.  Because Andrew discovered that the sewage line running under the LPG Property had been there for sixty years, he believed it "should be considered an easement that should not be interfered with and [was] a property right owned [by him] and [his] wife."

It is undisputed that the live petition at trial was the Houghs' pro se third amended petition.  In that petition against LPG, the Houghs sought a declaration for an easement by necessity, prescription, or estoppel.  The Houghs also asserted private nuisance and intentional infliction of emotional distress claims.[2]

In July 2022, the parties entered into a Rule 11 Agreement.  Pursuant to the agreement, the Houghs agreed to allow LPG "to run a snake with a camera from the pipes on/under" both properties.  After doing so, LPG represented in its answer to the lawsuit that "[a]n underground

---

[2]In its final judgment, the trial court found "that by filing their third amended original petition, [the Houghs] nonsuited their [prior] claims for property damage to their fence and trees."

sewage line that services [the Houghs'] Property extends through the boundary line between [the Houghs'] Property and the LPG Property, continues through the subsurface of the LPG Property, and terminates into the City of Weatherford's sewer system."

On October 18, 2022, LPG filed a motion for partial summary judgment arguing that there was no evidence of the Houghs' easement by necessity, prescriptive easement, and easement by estoppel claims. On January 4, 2023, the Houghs responded to the no-evidence motion by conceding that they were "unable to establish at th[at] time that there was a unity of ownership between the dominant estate . . . and . . . the servient estate." They also admitted that they were unable to locate any evidence showing "whether their claimed sewer easement existed at the time that the properties were unified."[3] Even so, Andrew filed an affidavit attempting to explain the basis of the easement claims. In that affidavit, Andrew stated that it was his "understanding that [the] sewer line ha[d] existed since at least the mid 1950's and was replaced by the previous owner of [his] property, Stephen Candler in 1991."[4] Andrew opined that Candler's repairs "were done with the agreement of the owner of the property at 302 Lee Street, Virginia Cotton Scott, who died in March 2011." Andrew added that the Houghs had continuously used the sewer since their 2003 purchase.

---

[3]A party asserting easement by necessity must prove the following elements: "(1) unity of ownership of the alleged dominant and servient estates prior to severance; (2) the claimed access remains a necessity and not a mere convenience (present necessity); and (3) the necessity also existed at the time the estates were severed (historical necessity)." *Couch v. Avila Aguilar*, 631 S.W.3d 898, 903 (Tex. App.—Fort Worth 2021, no pet.) (citing *Hamrick v. Ward*, 446 S.W.3d 377, 382 (Tex. 2014)). Because they admitted to a lack of evidence of the first element, it appears that the Houghs abandoned their claim of easement by necessity in their summary judgment response. Consequently, they do not challenge the trial court's summary judgment on easement by necessity on appeal.

[4]LPG objected to Andrew's affidavit because it showed that he lacked personal knowledge of the prior repairs and any conversations between Candler and Scott.

4

The Houghs also attached Candler's affidavit, showing that he owned the Houghs' Property from 1985 until 1992. Candler stated, "In approximately 1991, the sewer line from my house to the city sewer line became clogged with roots and was not functioning properly. The line needed to be replaced because the old line was clay pipe and had deteriorated." To accomplish the fix, Candler said he contacted Scott and, based on his conversations with her, "underst[ood] that the line could be replaced at [his] expense."[5]

After LPG's reply to the Houghs' summary judgment evidence pointed out that the Houghs failed to show Scott's acquiescence to any easement, the trial court granted LPG's partial no-evidence summary judgment on easement by necessity, easement by prescription, and easement by estoppel claims.

On June 14, 2023, LPG filed another partial no-evidence motion for summary judgment on the Houghs' intentional infliction of emotional distress claims. In response, the Houghs alleged that LPG's "callous capping of a family's vital sewer line" showed it acted intentionally and recklessly. The Houghs attached several affidavits in support of their claim, including Bopha's affidavit, which stated that the capping of the sewer line reminded her of surviving the concentration camps in the Killing Fields of Cambodia by the Khmer Rouge. Bopha said that "Gloor intentionally capped [their] sewer pipe off . . . tore down [their] chain-link fence, which is a few feet into [their] property, and cut down [their] trees." Even so, Bopha's affidavit showed that the fence was not felled until Gloor received a survey purportedly showing that it was on LPG's property line.

---

[5]LPG objected to the portion of Candler's affidavit that suggested he had an "understanding of [Scott's] representations" without stating what those representations were.

The Houghs also attached affidavits of their children that discussed the emotional toll they suffered from the lack of sewage service for three weeks. Kathy Hawkins, a neighbor, testified that the Houghs were forced to use her restroom, and Margaret Fraser, Bopha's friend, talked about the stress Bopha suffered during the ordeal. David Maisel, Andrew's brother, filed an affidavit stating, "We discussed how it all went down and I was left with the conclusion that [Gloor] had knowingly and intentionally cut his sewer line to force him to move it."[6]

After a short hearing, the trial court granted LPG's no-evidence partial summary judgment on the Houghs' intentional infliction of emotional distress claims. Since the only live cause of action was private nuisance,[7] the trial court set the matter for trial on December 4, 2023.

On November 22, 2023, the Houghs filed a motion for continuance, saying they needed more time to conduct discovery and potentially find counsel to represent them. Their motion also sought a continuance due to concerns about Bopha's post-traumatic stress disorder and because Andrew planned "to file additional ADA accommodations for [his] ADHD and Depression, which affect[ed] his ability to participate effectively in the case." After the pretrial hearing on November 28, in which the Houghs admitted that they could not afford counsel, the trial court denied their motion for continuance.

---

[6]LPG filed many objections to the Houghs' summary judgment evidence. They argued that Bopha's affidavit was conclusory and self-serving, that evidence of her children's emotional distress was irrelevant since they were not parties to the litigation, and that neither the children nor Fraser were designated as persons with relevant facts.

[7]A private nuisance "is a condition that substantially interferes with the use and enjoyment of land by causing unreasonable discomfort or annoyance to persons of ordinary sensibilities attempting to use and enjoy it." *Crosstex N. Tex. Pipeline, L.P. v. Gardiner*, 505 S.W.3d 580, 593 (Tex. 2016) (quoting *Holubec v. Brandenberger*, 111 S.W.3d 32, 37 (Tex. 2003)).

On the day of trial, LPG objected that the Houghs had failed to disclose who they were calling at trial, did not reveal which documents they would be relying on, and failed to disclose the factual basis of their private nuisance theory. *See* TEX. R. CIV. P. 194.4 (requiring pretrial disclosures of a party's trial witnesses and documents the party expects to offer at trial). LPG introduced, and the trial court admitted, the Houghs' discovery responses, which showed that the Houghs failed to disclose the legal theories and factual bases for a private nuisance claim. The Houghs also failed to supplement their disclosure responses to include any information that stated the amount of economic damages sustained by them and the method for calculating such damages. To the trial court, Andrew admitted, "Your Honor, we know we're going to lose. We obviously don't have any evidence."

At trial, Gloor testified that she was renovating the LPG Property and had hired a plumbing company after getting permits for the renovations. According to Gloor, the plumbing company, Equipped Plumbing, was working on the sewer when they "struck the sewer line with an excavator." When that occurred, Gloor said she "had the line capped." Because the Houghs admitted no evidence of any consequence related to private nuisance, the trial court granted a take-nothing judgment.

## II. The Trial Court's Summary Judgments Were Proper

In their first three points of error on appeal, the Houghs argue that the trial court erred by granting LPG's motions for partial summary judgment on their easement by estoppel, easement by prescription, and intentional infliction of emotional distress claims. Because we find that the

7

Houghs failed to raise a genuine issue of material fact on these claims, we find that the trial court's summary judgments were proper.

## A. Standard of Review

When a defendant files a motion asserting that there is no evidence of "at least one essential element of the plaintiff's claim . . . , the plaintiff must produce 'summary judgment evidence raising a genuine issue of material fact' on the challenged element." *Norco Corp. v. MMG Contractors, LLC*, No. 02-23-00394-CV, 2024 WL 2971688, at *2 (Tex. App.—Fort Worth June 13, 2024, no pet.) (mem. op.) (quoting *B.C. v. Steak N Shake Operations, Inc.*, 598 S.W.3d 256, 259 (Tex. 2020) (per curiam)); *see* TEX. R. CIV. P. 166a(i). "If the plaintiff fails to provide evidence that raises a genuine issue of material fact, then the defendant is entitled to summary judgment in its favor." *Norco Corp.*, 2024 WL 2971688, at *2 (citing TEX. R. CIV. P. 166a(i); *Marsillo v. Dunnick*, 683 S.W.3d 387, 394 (Tex. 2024); *B.C.*, 598 S.W.3d at 258–59; *Berdin v. Allstate Ins. Co.*, No. 02-22-00426-CV, 2023 WL 7037619, at *4 (Tex. App.—Fort Worth Oct. 26, 2023, no pet.) (mem. op.)).

"We review a trial court's no-evidence summary judgment de novo, examining the entire record in the light most favorable to the plaintiff—here, [the Houghs]—to determine whether a fact issue exists on the challenged element[s] of [their] claim[s]." *Id.* at *3 (citing *Wal-Mart Stores, Inc. v. Xerox State & Loc. Sols., Inc.*, 663 S.W.3d 569, 576 (Tex. 2023); *Berdin*, 2023 WL 7037619, at *4).

## B. There Was No Evidence of Easement by Estoppel

"An easement confers upon one person the valuable right to use the land of another for a specific purpose." *City of Canton v. Lewis First Monday, Inc.*, No. 06-23-00027-CV, 2023 WL 4945085, at *4 (Tex. App.—Texarkana Aug. 3, 2023, pet. denied) (mem. op.) (quoting *Horner v. Heather*, 397 S.W.3d 321, 325 (Tex. App.—Tyler 2013, no pet.)). "Since an easement is an interest in land, the grant of an easement should be drawn and executed with the same formalities as a deed to real estate." *Id.* (quoting *Horner*, 397 S.W.3d at 325). "The doctrine of equitable estoppel, or easement by estoppel, provides an exception to prevent injustice and protect innocent parties from fraud." *Id.* (quoting *Horner*, 397 S.W.3d at 325). It is an exception to the statue of frauds. *McClung v. Ayers*, 352 S.W.3d 723, 729 (Tex. App.—Texarkana 2011, no pet.). Accordingly, "[t]he gravity of a judicial means of acquiring an interest in land of another solely by parol requires that equitable estoppel be strictly applied." *Id.*

"Under the easement-by-estoppel doctrine, the owner of the alleged servient estate may be estopped from denying an easement's existence if that owner made representations that the owner of the alleged dominant estate (the promisee) acted on." *PSQ Barbie, LP v. Howard*, No. 02-22-00050-CV, 2023 WL 1456928, at *10 (Tex. App.—Fort Worth Feb. 2, 2023, no pet.) (mem. op.) (citing *Schwendeman v. BT SFRL I, LLC*, No. 02-19-00007-CV, 2020 WL 479592, at *8 (Tex. App.—Fort Worth Jan. 30, 2020, pet. denied) (mem. op.)). "The elements required to create an easement by estoppel are (1) a representation of the easement communicated, either by words or action, by the owner to the promisee; (2) the communication was believed; and (3) the promisee relied upon the communication." *Id.* (citing *Schwendeman*, 2020 WL 479592, at *8).

9

"These elements apply at the time the communication creating the alleged easement is made." *Id.* (citing *Schwendeman*, 2020 WL 479592, at \*8).

Here, the Houghs introduced no evidence showing that any prior owner of the LPG Property, including Scott, had communicated the existence of an easement by words or action. At best, the evidence shows that Candler obtained permission to enter Scott's property for the purpose of repairing a sewer line. Such evidence is insufficient to show the existence of any easement because "an easement by estoppel cannot be established by an implied and indirect communication but must be 'certain, precise, and clear.'" *City of Canton*, 2023 WL 4945085, at \*5 (quoting *Horner*, 397 S.W.3d at 325). Simply put, even when viewing the evidence in the light most favorable to the Houghs, their evidence showed only permissive use, which is insufficient to create an easement by estoppel. *See id.*; *Horner v. Heather*, 397 S.W.3d 321, 326 (Tex. App.—Tyler 2013, no pet.); *McClung*, 352 S.W.3d at 730 (citing *Martin v. Cockrell*, 335 S.W.3d 229, 238–41 (Tex. App.—Amarillo 2010, no pet.) ("gentlemen's agreement" or "friendly neighborly permission" to use land does not support easement by estoppel)). For this reason, the trial court's partial summary judgment on the Houghs' easement by estoppel claims was proper.

## C.  There Was No Evidence of Easement by Prescription

"Burdening another's property with a prescriptive easement is not well-regarded in the law." *McClung*, 352 S.W.3d at 728. "A person can acquire a prescriptive easement if he uses someone else's land in a manner that is adverse, open and notorious, continuous, and exclusive

for the requisite ten-year period."[8] *Albert v. Fort Worth & W. R.R. Co.*, 690 S.W.3d 92, 98 (Tex. 2024) (per curiam). "The adverse use necessary to establish a prescriptive easement is the same adversity of use necessary to establish title by adverse possession." *Id.* "As such, the dominant estate holder's use must be of such a nature and character that it notifies the servient estate holder that the claimant is asserting a hostile claim." *Id.* Also, "the use must be exclusive; when a landowner and the claimant of an easement 'both use the same way,' the claimant's use is not exclusive and is thus insufficient to establish a prescriptive easement." *Id.* (quoting *Brooks v. Jones*, 578 S.W.2d 669, 673 (Tex. 1979)).

The Houghs argue that they established open and notorious possession of the sewer line because "the cleanout on appellants' property was visible through the chain-link fence." Even so, that fact fails to show possession of the sewer line in an open or notorious manner.

"Use by express or implied permission, no matter how long continued, cannot ripen into an easement by prescription [when] adverse use is lacking." *McClung*, 352 S.W.3d at 728 (citing *Machala v. Weems*, 56 S.W.3d 748, 760 (Tex. App.—Texarkana 2001, no pet.)). "[T]he dominant estate holder's use must be of such a nature and character that it notifies the servient estate holder that the claimant is asserting a hostile claim." *Albert*, 690 S.W.3d at 98. "[T]he use must be exclusive." *Id.* (citing *Brooks*, 578 S.W.2d at 673); *see McClung*, 352 S.W.3d at 727–28.

---

[8]Here, because the Houghs put forth no evidence of a color of title or payment of taxes on the LPG property, they were required to show adverse possession for ten years. *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 16.024, 16.026, § 16.025 (Supp.).

Here, there was no evidence that the Houghs' possession to the sewer line was adverse to the interests of LPG or its predecessors-in-interest because the Houghs' own summary judgment evidence showed that LPG and its predecessors-in-interest also used the sewage pipe. It is well established in Texas that "[m]ere use[] alone will not create an easement." *Maricle v. Hines*, 247 S.W.2d 611, 613 (Tex. App.—Fort Worth 1952, no writ). In addressing an issue similar to the one raised in this case, the Second Court of Appeals wrote, "It would seem to be rather unusual for one to lay his sewer line partly across his neighbor's lot and connect with his neighbor's line without permission but use with the permission of the owner will never ripen into prescription. It must be under a claim of right and adverse." *Id.*; *see Wiegand v. Riojas*, 547 S.W.2d 287, 290 (Tex. App.—Austin 1977, no writ). Since the Houghs' summary judgment evidence showed that Candler received permission from Scott to go on her property to repair the sewer line, the Houghs failed to meet their summary judgment burden to create a fact issue on their easement by prescription claim. Accordingly, the trial court's no-evidence summary judgment was proper.

**D. There Was No Evidence that LPG Intentionally or Recklessly Inflicted the Houghs' Emotional Distress**

A plaintiff making an intentional infliction of emotional distress claim must "show that (1) [the defendant] acted intentionally or recklessly, (2) [the defendant's] conduct was extreme and outrageous, (3) [the defendant's] actions caused [plaintiff] emotional distress, and (4) the resulting emotional distress was severe."[9] *Leachman v. Dretke*, 261 S.W.3d 297, 315 (Tex.

---

[9]We have no doubt, given the summary judgment evidence, that the Houghs experienced severe emotional distress from the lack of sewage service.

App.—Fort Worth 2008, no pet.) (citing *Hoffmann-La Roche, Inc. v. Zeltwanger*, 144 S.W.3d 438, 445 (Tex. 2004)); *see Kroger Tex. Ltd. P'ship v. Suberu*, 216 S.W.3d 788, 796 (Tex. 2006).

In their live petition, the Houghs alleged the following conduct constituted intentional infliction of emotional distress:

> Only days before cutting off Plaintiffs' sewer line, Plaintiff informed the Defendant that the line in question was his only sewer connection to the municipal sewer system. Despite knowing this information and knowing that the Plaintiffs' family would have no sewer service if the line was capped, the Defendant knowingly and intentionally capped the Plaintiffs' sewer line, causing Plaintiffs' severe emotional distress.[10]

Here, even if there was more than a scintilla of evidence of the first element of intentional infliction of emotional distress, the Houghs cannot get past the second, critical element. "A defendant's conduct satisfies the second element only if it is 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" *Suberu*, 216 S.W.3d at 796 (quoting *Twyman v. Twyman*, 855 S.W.2d 619, 621 (Tex. 1993) (quoting RESTATEMENT (SECOND) OF TORTS § 46 cmt. d (1965))).

"Meritorious claims for intentional infliction of emotional distress are relatively rare precisely because most human conduct, even that which causes injury to others, cannot be fairly characterized as extreme and outrageous." *Id.* (citing *Creditwatch, Inc. v. Jackson*, 157 S.W.3d 814, 815 n.1 (Tex. 2005)). "Conduct that is tortious or otherwise wrongful is not necessarily

---

[10]In their pro se brief, the Houghs now argue that the tearing down of the fence was extreme and outrageous. We need not address this argument because the Houghs' live petition established that their claim was based solely on the capping of the sewer line and that they had abandoned all claims related to the fence. *See Lake Jackson Med. Spa, Ltd. v. Gaytan*, 640 S.W.3d 830, 839 n.7 (Tex. 2022); *Bos v. Smith*, 556 S.W.3d 293, 306 (Tex. 2018) ("Amended pleadings supersede prior pleadings, and any claim not carried forward in an amended pleading is deemed dismissed.").

extreme or outrageous." *Jackson v. Head Start of Greater Dallas, Inc.*, No. 05-22-00448-CV, 2023 WL 2364973, at *3 (Tex. App.—Dallas Mar. 6, 2023, pet. denied) (mem. op.) (citing *Bradford v. Vento*, 48 S.W.3d 749, 758 (Tex. 2001); *Brewerton v. Dalrymple*, 997 S.W.2d 212, 215 (Tex. 1999) (an action that is "intentional, malicious, or even criminal does not, standing alone, mean that it is extreme or outrageous for purposes of intentional infliction of emotional distress")). "Whether a defendant's conduct is 'extreme and outrageous' is a question of law." *Bradford v. Vento*, 48 S.W.3d 749, 758 (Tex. 2001) (quoting *Brewerton*, 997 S.W.2d at 216).

The Houghs attached evidence to their summary judgment response showing that, during renovations, LPG hit the sewer line and had it capped. The Houghs' summary judgment responses, evidence, and briefing to this Court fail to explain how an owner capping a sewer line to prevent a sewage leak on property it owns can constitute extreme and outrageous conduct. We hold, as a matter of law, that LPG's capping of a sewer line, in the absence of any evidence of an easement by the Houghs, did not constitute the extreme and outrageous conduct required by the second element of an intentional infliction of emotional distress claim.

Because there was no evidence of the second element of the Houghs' intentional infliction of emotional distress claim, we find that the trial court's partial summary judgment on this claim was proper.

We overrule the Houghs' first three points of error challenging the trial court's summary judgment rulings.[11]

---

[11]The Houghs also argue that the trial court erred by not giving them the opportunity to amend affidavits and pleadings for form. Although there were many objections to the Houghs' affidavits and responsive arguments during the summary judgment proceedings, we have considered them all in our analysis.

### III. The Trial Court Did Not Abuse Its Discretion by Failing to Grant a Continuance

In their fourth point error, the Houghs argue that the trial court erred by failing to grant a continuance based on their "ADHD[12] and PTSD[13] ADA[14] accommodation requests." We review a trial court's ruling on a motion for continuance for an abuse of discretion. *BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 800 (Tex. 2002). A trial court abuses its discretion if it "act[s] without reference to any guiding rules or principles"—that is, if its act is arbitrary or unreasonable. *Low v. Henry*, 221 S.W.3d 609, 614 (Tex. 2007); *Cire v. Cummings*, 134 S.W.3d 835, 839 (Tex. 2004). An appellate court cannot conclude that a trial court abused its discretion merely because the appellate court would have ruled differently in the same circumstances. *E.I. du Pont de Nemours & Co. v. Robinson*, 923 S.W.2d 549, 558 (Tex. 1995); *see also Low*, 221 S.W.3d at 620.

Although the Houghs requested "ADA accommodations for ADHD . . . and . . . PTSD," nothing showed that a continuance was required to obtain them. In fact, the Houghs failed to identify what specific accommodations they were requesting until they filed their ADA accommodations requests on the day of trial. Moreover, the record shows that the case had been pending for about a year and a half and, as a result of the trial court's summary judgment proceedings, only the issue of private nuisance remained at trial. Trial was originally set for November 6, 2023, but was reset to December 4. The Houghs had ample time to conduct discovery and received proper notice of the trial setting. In light of the procedural history of this

---

[12]Attention-Deficit/Hyperactivity Disorder.

[13]Post Traumatic Stress Disorder.

[14]Americans with Disabilities Act.

case, the Houghs' filing of their requested ADA accommodations on the day of trial, and the lack of anything showing that a continuance was required to obtain necessary accommodations, we cannot say that the trial court acted without reference to guiding principles when it overruled the motion for continuance. As a result, we overrule this point of error.[15]

## IV. The Trial Court Did Not Err by Excluding Mental-Anguish Damages for the Private Nuisance Claim

In their last point of error, the Houghs argue that the trial court erred by failing to consider mental-anguish damages in connection with their only remaining claim. "We review a trial court's evidentiary rulings for abuse of discretion." *Horizon/CMS Healthcare Corp. v. Auld*, 34 S.W.3d 887, 906 (Tex. 2000). "In reviewing that decision for an abuse of discretion, we must uphold it if there is any legitimate basis in the record for the ruling." *M.C. v. Pantego Camp Thurman, Inc.*, 543 S.W.3d 439, 444 (Tex. App.—Fort Worth 2018, no pet.) (citing *Owens-Corning Fiberglas Corp. v. Malone*, 972 S.W.2d 35, 43 (Tex. 1998)).

Here, there was no cause of action for mental-anguish damages to attach. When asked, a party must disclose "the legal theories and, in general, the factual bases of the responding party's claims or defenses." TEX. R. CIV. P. 194.2(b)(3). A party also has the duty to supplement their discovery responses. TEX. R. CIV. P. 193.5. "A party who fails to make, amend, or supplement a discovery response, including a required disclosure, in a timely manner, may not introduce in evidence the material or information that was not timely disclosed," unless the party makes a showing of good cause and shows that the opposing party will not be unfairly surprised or

---

[15]The Houghs also argue that their motion for continuance should have been granted because Maisel and Hawkins were not available for trial due to illness. Because the record shows that this was not a basis of the Houghs' written motion for continuance, we will not consider this argument. *See* TEX. R. CIV. P. 251.

unfairly prejudiced. TEX. R. CIV. P. 193.6(a). This rule can be used to exclude evidence at trial. *Fort Brown Villas III Condo. Ass'n, Inc. v. Gillenwater*, 285 S.W.3d 879, 882 (Tex. 2009) (per curiam).

At trial, LPG established that the Houghs never supplemented their discovery responses to include their private-nuisance theory. The trial court agreed, and the Houghs do not challenge that ruling on appeal. *See Gillenwater*, 285 S.W.3d at 882 (a trial court does not abuse its discretion by striking evidence under Rule 193.6). Because the Houghs' failure to adhere to discovery rules precluded them from introducing evidence of the only viable cause of action at trial, we find that the trial court did not abuse its discretion by excluding evidence of mental anguish at trial. *See Tex. Indus., Inc. v. Vaughan*, 919 S.W.2d 798, 804 (Tex. App.—Houston [14th Dist.] 1996, writ denied) ("mental anguish is not a cause of action"). Accordingly, we overrule the Houghs' last point of error.[16]

---

[16]In their brief, the Houghs question whether the trial court (1) erred by failing to grant a continuance for the intentional infliction of emotional distress summary judgment hearing, (2) erred by "prejudicially accepting the defendants' statements without consideration of the plaintiffs' informal objections," and (3) erred by conducting a bench trial instead of a jury trial. Even though they ask these questions in their brief, the Houghs wholly failed to brief those issues.

"As a preliminary matter, we note that a pro se party is held to the same standard as a licensed attorney." *In re J.A.*, No. 02-23-00129-CV, 2024 WL 3819373, at *2 (Tex. App.—Fort Worth Aug. 15, 2024, no pet. h.) (mem. op.) (citing *Amir-Sharif v. Mason*, 243 S.W.3d 854, 856 (Tex. App.—Dallas 2008, no pet.); *Maddox v. Hutchens*, No. 2-02-159-CV, 2003 WL 21983260, at *1 (Tex. App.—Fort Worth Aug. 21, 2003, no pet.) (per curiam) (mem. op.)). "While we are required to construe appellate briefs liberally, it is the party's responsibility to fully brief an argument and to provide record citations and relevant legal authority to support his position." *Id.* (citing TEX. R. APP. P. 38.1(i), 38.9; *Allegiance Hillview, L.P. v. Range Tex. Prod., LLC*, 347 S.W.3d 855, 873 (Tex. App.—Fort Worth 2011, no pet.)). "Our role is to review the arguments made and dispose of the appeal; we cannot search the record and research the law to put together the parties' arguments for them." *Id.* (citing *De Los Reyes v. Maris*, No. 02-21-00022-CV, 2021 WL 5227179, at *9 (Tex. App.—Fort Worth Nov. 10, 2021, no pet.) (mem. op.); *see* TEX. R. APP. P. 38.1(i)). "Likewise, when an appellant presents . . . issues that do not match up with arguments raised in the body of the brief, we need only address those arguments raised in the body of the appellant's brief." *Id.* (citing *Columbia Med. Ctr. of Las Colinas v. Bush ex rel. Bush*, 122 S.W.3d 835, 841 n.1 (Tex. App.—Fort Worth 2003, pet. denied)).

**V.      Conclusion**

We affirm the trial court's judgment.


                                          Scott E. Stevens
                                          Chief Justice


Date Submitted:      September 3, 2024
Date Decided:        October 23, 2024

---

"To the extent that [the Houghs'] issues do not match up with the arguments raised in the body of [their] brief" or to the extent that their "issues are unsupported by argument and relevant legal authorities, those issues have been waived due to inadequate briefing." *Id.*; *see* TEX. R. APP. P. 38.1(i).  As a result, they are overruled.